648 P.2d 777

**Dannie K. DAVIS and Betty J. Davis, Petitioners-Appellees,**

v.

**CITY OF ALBUQUERQUE, a New Mexico Municipality, and City Council of the City of Albuquerque, Respondents-Appellants,**

**and**

**Lynn L. Coburn, David J. Ricks, David R. Page and Leith H. Page, Respondents-In-Intervention.**

No. 13738.

Supreme Court of New Mexico.

June 24, 1982.

Rehearing Denied July 19, 1982.

George R. "Pat" Bryan, III, City Atty., Charles N. Estes, Jr., Asst. City Atty., Albuquerque, for respondents-appellants.

Wallin & Guest, Michael Guest, Albuquerque, for petitioners-appellees.

Branch, Perkal & Associates, Albuquerque, respondents-in-intervention.

## OPINION

SOSA, Senior Justice.

This is an appeal from the district court's second reversal of appellant's (City's) decision to down zone appellees' (the Davis') property from R–3 (medium to high density residential) to SF (single family residential). The issue on appeal is whether the City must prove either (1) a mistake in the original zoning or (2) a substantial change in the character of the neighborhood since the original zoning, to justify a down zoning change, in accordance with the rule of *Miller v. City of Albuquerque*, 89 N.M. 503, 554 P.2d 665 (1976).

This case was brought by the Davises in the district court as a petition for writ of certiorari pursuant to Section 3–21–9, N.M. S.A.1978, governing zoning regulations. They sought to challenge a zoning map amendment adopted by the City and its City Council, and approved by the mayor. The Davises own four contiguous lots along Silver Avenue, S.E., in Albuquerque which fall within the City's University Neighborhoods Sector Development Plan (Plan). Following public hearings, the City adopted the comprehensive plan and rezoned the Davis' lots from R–3 to SF.

The district court remanded the case to the City Council for reconsideration of its adoption of the Plan. The court held that the City had failed to show that the rezoning of Davis' property

2. Was made after a showing that either there was a mistake in the original zoning or that a substantial change [had] occurred in the character of the neighborhood since the original zoning to such an extent that a change in the original zoning [was] reasonably necessary to protect the public interest.

On remand, the City Council held a public meeting, heard testimony and received exhibits. The City Council reaffirmed the rezoning of the Davis' land. The City filed a "Further Return to Writ of Certiorari Pursuant to Remand" with the district court. The court held that the "mistake or change" rule adopted by *Miller, supra*, applied to this rezoning, and that the City had failed to prove either a mistake or change. Consequently, the court reversed the City Council's decision to rezone.

The *Miller* case involved a downzoning by the City of Albuquerque. Although the landowner had requested a rezoning of one of his parcels of land to a less restrictive use, the City Planning Department recommended that it and the landowner's other parcel of land be rezoned to a more restrictive use. The City adopted the recommendation and downzoned the two parcels. The trial court reversed. Affirming the trial court's reversal of the City's action, this Court explained the rationale behind the rule governing amendments to a zoning ordinance.

First, there is the presumption that the initial determination of the type of zoning for the property involved is the correct one. The second reason is that, even though a landowner has no vested right in a particular zoning classification for his property and his property is subject to rezoning, he still has a right to rely on the requirement that *anyone seeking to rezone his property to a more restrictive zoning must show that either there was a mistake in the original zoning or that a substantial change has occurred in the character of the neighborhood since the original zoning to such an extent that the reclassification or change ought to be made.* Additionally, there is the desirable stability of zoning classifications upon which the property owner has a right to rely, since property may be purchased and sold or uses of the property undertaken in reliance on existing classifications. [Emphasis added.]

*Miller, supra* at 506, 554 P.2d at 668.

In the present case, the City argues that this "mistake or change" rule has been followed in only a few jurisdictions, and that in those jurisdictions its application is limit-

ed to situations involving only piecemeal rezoning. They argue that the rule has not been applied to comprehensive rezonings where the zoning of extensive geographic areas is changed by zoning authorities after full public consideration, as is the case here. They rely on the following quote from *Miller* to further support their argument:

> We do not want to be understood as saying that a property owner has a vested right in a particular zoning classification but do want to emphasize that, before a piecemeal zoning change is sought, the above principles and considerations must be taken into account, particularly when the zoning change of a piece of property is sought by the zoning authority instead of by the owner of the property affected.

*Id.* Alternatively, they argue that if *Miller, supra,* applies to downzoning pursuant to a comprehensive plan, it ought to be overruled.

■ While the above-quoted sentence in *Miller* uses the term "piecemeal," a careful reading of the case indicates that it was not used as a term of art to mean partial zoning by a municipality outside of a comprehensive plan. The district court in *Miller* held that the rezoning amounted to illegal spot zoning. It is within this context that the Court used the term "piecemeal," and it is reasonable to assume that they used it to refer to an unreasonable rezoning of only a small piece of land. For this reason, we do not find that *Miller* limits the mistake or change rule to piecemeal rezoning, as that term is used in the cases cited by the City.

After a thorough review of the record, we fail to see how the facts of this case can be distinguished from the facts in *Miller.* Both cases involve downzoning requests by a municipality and both involve substantial economic loss to a single landowner.

■ Even though the downzoning here was done pursuant to a comprehensive plan, this fact alone will not distinguish this case from *Miller.* Only eight blocks of the University Neighborhoods Sector Development Plan were severely downzoned from R–3 to SF, while other areas, although slightly downzoned (*e.g.,* from medium density residential or R–3 to diverse residential or DR, which is equivalent to R–2), were allowed to continue at substantially the same density and with the same types of structures. In addition, there were 93 rental units, commercial buildings and a hospital in the surrounding area, all of which would be allowed to continue to operate for the life of the respective buildings. Also, the downzoning here is not in accordance with the stated purpose of the comprehensive plan, which is to "encourage both a mixture of low and *high density housing*" and whose objective is the "[a]doption of a land use plan which will encourage both single-family home ownership and moderately sized apartments." University Neighborhoods Area Sector Development Plan, p. 17 & 18 (August 1978) (emphasis added).

While a more reasonable downzone or a more reasonable comprehensive plan might be sufficient to remove the case from the *Miller* requirements of "mistake or change," we do not consider this issue here. In addition, we are not attempting to limit the flexibility of a zoning authority to rezone as long as the rezoning is reasonable. We merely hold that the facts of this case insufficiently distinguish it from *Miller* to remove it from the "mistake or change" rule.

■ There is substantial evidence to support the district court's finding that the City failed to show, both originally and on remand, that the requirements of *Miller* had been met. The City failed to show that there had been a mistake in the original zoning. The fact that single-family dwellings remained in the area since the R–3 zoning in the 1950's does not make the R–3 zoning a mistake. Absent a showing that the original zoning was mistakenly listed as a different zone than that intended due to clerical error, oversight, or misapprehension of the facts, the original zoning is deemed to be correct. *See generally,* 1 R. Anderson, American Law of Zoning 2d § 5.07 (1976).

■ The City also failed to show that there was a sufficient change in the charac-

ter of the neighborhood to justify a down-zoning to SF. While the eight-block strip contained residential dwellings, there was evidence that many of the houses in the strip and in surrounding areas had been converted to multiple family dwellings. Also, a significant portion of the surrounding area contained multiple-family and commercial buildings.

In view of our disposition of this case, we do not deem it necessary to discuss the other issues raised. We affirm the district court.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.