927 P.2d 529

WEST OLD TOWN NEIGHBORHOOD ASSOCIATION, a New Mexico non-profit corporation, Judy Gossett, Lanny Tonning and Linda Thorne, Petitioners–Appellants,

v.

CITY OF ALBUQUERQUE, a New Mexico municipal corporation, Respondent–Appellee,

and

Julia Milloy and Construction Professionals, Inc., Interested Parties.

No. 16281.

Court of Appeals of New Mexico.

Sept. 6, 1996.

Certiorari Denied Oct. 23, 1996.

496

Hessel E. Yntema, III Oman, Gentry & Yntema, P.A. Albuquerque, for Petitioners–Appellants.

Robert M. White, City Attorney and David N. Suffling, Assistant City Attorney, Albuquerque, for Respondent–Appellee.

John A. Myers and Kevin J. McCready, Myers, Oliver & Price, P.C., Albuquerque, for Interested Parties.

OPINION

BOSSON, Judge.

1. The opinion filed in this case on July 30, 1996, is hereby withdrawn and the following opinion is substituted. Respondent-appellee's motion for rehearing is denied.

2. West Old Town Neighborhood Association appeals a zoning decision of the Albuquerque City Council relating to newly annexed property. In the course of annexation and over the protest of some of the surrounding neighborhood, the City Council changed the zoning from that which had previously been designated in the sector development plan for the Old Town area. We are asked to review the City's zoning ordinances, regulations, policies and procedures and to determine the weight to be given a zoning designation in a sector development plan when it pertains to land initially located outside the City and then annexed. We also determine whether the defined criteria for rezoning set forth in the City's zoning code must be satisfied in an annexation situation. We conclude that the City did not comply with its own zoning code and reverse.

FACTUAL AND PROCEDURAL HISTORY

3. The property in question, a 6.3 acre tract owned by Julia Milloy and Construction Professionals, Incorporated (Milloy), is located in the West Old Town area of Albuquerque and was previously zoned County A-1 by Bernalillo County. In 1979 the County issued a special use permit for a 40 lot subdivision on the property, but it was never built. Milloy acquired the property later and petitioned for annexation into the City to obtain water and sewer services for the property. Milloy petitioned the City's Environmental Planning Commission (EPC) requesting that the property which was zoned as RA-1 (two dwelling units per acre) be zoned at RA-2 density (four dwelling units per acre).

4. Although located outside the City, the property was within the boundaries of the City's Old Town Sector Development Plan (Sector Plan), which provided a zoning plan for land in the greater Old Town area. Under NMSA 1978, Section 3-19-5 (Repl. Pamp.1995), the City has authority to adopt plans for the development of areas outside its boundaries but within its planning and platting jurisdiction. In 1988 the City Council amended the Sector Plan to decrease the allowable density from RA-2 to RA-1, so that the Sector Plan then read: "As land in the area which is not in the City is annexed, it should be zoned RA-1 to maintain the existing character of the area." The existing character of the western portion of the area, where the Milloy property is located, was described in the Sector Plan as semi-rural. Milloy's request for RA-2 zoning conflicted with the RA-1 designation in the Sector Plan, and therefore Milloy's annexation petition also sought to amend the Sector Plan.

5. On January 20, 1994, after several hearings, the EPC recommended to the City Council's Land Use, Planning and Zoning Committee (LUPZ) that the annexation request be approved, but not the RA-2 zoning density. Instead, the EPC fashioned a compromise, proposing that the property be zoned SU-1 (special use) with a recommended density falling between RA-1 and RA-2. The EPC also advised the LUPZ that the Sector Plan would have to be amended to accommodate the SU-1 zoning for the property, because SU-1 was not a permitted zone in the Sector Plan. After a hearing, the LUPZ adopted the EPC recommendations, and the Milloy proposal was then ready for final approval by the City Council.

6. On May 16, 1994, the City Council accepted the recommendations and approved the annexation, rezoning, and Sector Plan amendment. The City Council adopted Ordinance 19, which annexed and rezoned the tract SU-1, and adopted Resolution 45 which amended the Sector Plan to permit the new SU-1 zoning for this particular property. The Resolution stated the SU-1 zoning category was not necessarily applicable to other vacant parcels in the area covered by the Sector Plan and was not a precedent for other zoning changes.

7. The West Old Town Neighborhood Association petitioned the district court for a writ of certiorari to review both the zoning decision and the amendment of the Sector Plan. See NMSA 1978, § 3-21-9 (Repl.

Pamp.1995). The annexation itself was not challenged. The district court affirmed the action of the City Council, concluding that the City's enactment of Ordinance 19 and Resolution 45 was not "arbitrary and/or capricious, was not otherwise contrary to law, and is supported by substantial evidence." The Neighborhood Association appeals.

## DISCUSSION

8. If this were simply a case of rezoning land already within the City, all parties agree that to amend both the City zoning map and the Sector Plan, the City would first have to meet the defined criteria for rezoning set forth in the City zoning code. *See* Albuquerque, N.M., Zoning Code ch. 14, art. XVI, § 14–16–4–1 (1995 S–5); Resolution 270–1980. However, rezoning is only granted in limited circumstances, usually based on changes in the surrounding community. The question is whether those same rezoning procedures apply when land is being annexed into the City.

9. The Neighborhood Association contends that this is rezoning and the defined criteria do apply, emphasizing that the Sector Plan was specifically designed to deal with annexation. The Neighborhood Association takes the position that the Sector Plan creates zoning for any property located within its boundaries, effective upon annexation into the City, and any deviation from the zoning designated in the Sector Plan must follow the protocol for rezoning.

10. The City[1] rejects the Neighborhood Association's claim that the Sector Plan establishes the zoning status of the property. The City contends that the Sector Plan is merely advisory and does not create zoning for that part of the area located outside city boundaries. The City argues that because the annexed property had no prior city zoning, then this cannot be rezoning. The City takes the position that, upon annexation, the City Council is free to select an initial zoning regardless of the Sector Plan, and it may do so without adhering to the defined criteria for rezoning set forth in the City zoning code. Alternatively, the City argues that if

the rezoning criteria do apply, they have been substantially satisfied in this instance. We turn initially to what criteria apply, if any, to the City's zoning determination upon annexation.

### Standard of Review

11. As the City correctly points out, the City Council may enact the zoning it chooses when it authors a sector plan. The City appears to argue that the challenged zoning action was legislative in nature and should be reviewed under the deferential standard described in *Thompson v. McKinley County*, 112 N.M. 425, 430, 816 P.2d 494, 499 (1991) (legislation is presumptively valid). *See Downtown Neighborhoods Ass'n v. City of Albuquerque*, 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989) (enactment of zoning rules and regulations is a legislative function which must be reviewed with deference). However, legislative actions generally reflect public policy in relation to matters of a general nature, as when a determination is made regarding the zoning of a community or area without consideration to any particular piece of property. *See Dugger v. City of Santa Fe*, 114 N.M. 47, 51, 834 P.2d 424, 428 (Ct.App.), *writ quashed*, 113 N.M. 744, 832 P.2d 1223 (1992). In this instance, the City's amendments to the zone map and Sector Plan were intended to apply only to a single property, the tract belonging to Milloy. In New Mexico, zoning decisions involving the application of a general rule to a specific property are not legislative acts; rather they are deemed to be quasi-judicial in nature. *Id.* Because the challenged zoning actions are quasi-judicial, the administrative standard of review would be the appropriate standard. *See id.* at 54, 834 P.2d at 431. We apply a whole record standard of review to administrative decisions looking at all the evidence, favorable and unfavorable, bearing on a decision to determine if there is substantial evidence to support the result. *Fitzhugh v. New Mexico Dep't of Labor*, 122 N.M. 173, 180, 922 P.2d 555, 562 (1996). The decision will be affirmed if it is supported by the applicable

---

1. For ease of reference, this opinion attributes to one party, the City, all arguments made in favor of the new zoning whether the arguments were actually made by the City or the Interested Parties.

law and by substantial evidence in the record as a whole. *Id.* at 180, 922 P.2d at 562.

*Sector Development Plans*

■■■ 12. Citing *Dugger*, the City argues that the Sector Plan did not establish zoning because it was adopted by City resolution, not by ordinance. *See Dugger*, 114 N.M. at 55, 834 P.2d at 432 (resolutions do not carry the weight of law, as do ordinances). In *Dugger*, this Court discussed the difference between resolutions and ordinances citing to *Williams v. City of Tucumcari*, 31 N.M. 533, 249 P. 106 (1926) and 5 Eugene McQuillin, *The Law of Municipal Corporations* § 15.02 (3d ed. 1088). *Id.* The distinction between our case and the circumstances of *Dugger* can be found in the cited material. In *Williams*, the Tucumcari city council had undertaken by informal order an action which local statute required to be accomplished by ordinance. *Williams*, 31 N.M. at 536, 249 P. at 107. The New Mexico Supreme Court said that when action by ordinance is required, "[a] resolution is not sufficient, except perhaps when passed with all the formalities required of ordinances, this being its legal equivalent." *Id.* The cited section of McQuillen also discusses the differences between resolutions and ordinances. Determining whether an action of a municipal legislative body is an ordinance or resolution depends less on what it is called, and more on what it seeks to accomplish. McQuillen, *supra*, § 15.02. When a resolution is "in substance and effect an ordinance or permanent regulation, the name given to it is immaterial. If it is passed with all the formalities of an ordinance it thereby becomes a legislative act, and it is not important whether it be called ordinance or resolution." *Id.*

13. The formalities involved in approving a sector plan are found in Section 14–16–4–1(E) of the Albuquerque zoning code which specifies that the actions taken to adopt a sector development plan must abide by the same provisions of the zoning code used for zone map amendments. These procedures include a public hearing conducted by the Planning Commission with notice by publication, notice by posting the property, and notice by mail to property owners within the area of proposed change. Depending on the nature of the proposed change, either the Planning Commission or the City Council determines whether to approve the change. When land is being concurrently annexed and zoned, the City Council has the sole authority to amend the zoning map and any related sector development plans. In this case the same procedures were used to amend the zoning map and the Sector Plan at the EPC meeting, the LUPZ meeting, and the meeting of the City Council. The Sector Plan, although passed by resolution, was passed with all the formalities of its companion legislation, Ordinance 19, which annexed the property and amended the zoning map. To make the distinction argued by the City would violate a basic tenet of judicial review by exalting form over substance. *See Dugger*, 114 N.M. at 52, 834 P.2d at 429.

■■■ 14. Whether sector development plans create zoning for areas within their boundaries is a question best answered by the City planning and zoning code. The fundamental principle of construction for zoning ordinances is to determine and carry out the intent of the legislative body, in this case the Albuquerque City Council. 3A Norman J. Singer, *Sutherland Statutory Construction* § 75.07, at 440 (5th ed. 1992). The language and procedures employed by the planning and zoning code confer greater authority upon sector development plans than the City is willing to acknowledge.

15. The Albuquerque planning ordinance describes a hierarchy of planning measures used to manage urban development. *See* Albuquerque Planning Ordinance §§ 14–13–1–1 to 14–13–1–3 (1994). Among those are sector development plans which are classified as Rank Three Plans. *See* § 14–13–1–2(C)(1) (1994). Sector development plans typically cover a large area with common characteristics and specify standards for maintaining the character of the area, including permitted uses and number of dwellings per acre. *Id.* The planning ordinance states that sector development plans "create special zoning regulations for the area covered." *Id.* The planning ordinance distinguishes between

different kinds of Rank Three Plans, noting that sector development plans create zoning regulations while neighborhood development plans may only propose zoning. Section 14–13–1–2(C)(2).

16. As described above, the procedures for adopting a sector development plan are identical to those for adopting a zone map. The procedures for amending a sector plan are also the same as those for amending a zoning map. Further, if a requested zoning change conflicts with an existing sector plan, as in this case, the zoning code requires that two applications be submitted; one to amend the zoning map and the other to amend the sector plan. Section 14–16–4–1(C)(9)(a). A proposed zoning map amendment that is in conflict with a sector development plan cannot be processed by the city unless a proposed plan amendment is also submitted. Therefore, by the very language of the Albuquerque planning and zoning ordinances, the City has expressed the intention that sector development plans have the force of zoning. The record of the EPC proceedings in this case also indicates an awareness of the weight due the Sector Plan and a concern about departing from its provisions, particularly in light of the recent amendment by the City Council changing the zoning to RA–1.

17. Based on the foregoing, we conclude that the Sector Plan was intended to create zoning for the West Old Town area which became operative for this property at the time of annexation. We decline to follow the City's theory that the Council was free to enact any zoning it wished regardless of the Sector Plan and without following the defined criteria for rezoning. Such a theory would, in so many words, give the City one free pass when zoning annexed land. It would ignore one of the purposes of zoning ordinances, which is to protect comprehensive planning and zoning in anticipation of annexation. Accepting the City's position would undercut the carefully balanced compromises on which sector plans are based and would jeopardize the ability of residents living near city boundaries to rely on the zoning already designated in these plans. In this case, residents of Old Town were directly involved in fashioning and then amending the Sector Plan to limit annexed land to RA–1; they should be able to rely upon the Sector Plan for predictable, stable land use policies for their area. *Cf. Miller v. City of Albuquerque*, 89 N.M. 503, 506, 554 P.2d 665, 668 (1976) (even though property owners have no vested right in a particular zoning classification, they have a right to rely on compliance with the proper procedures for amending a zoning ordinance).

*Resolution 270–1980*

18. Because the Sector Plan established RA–1 density for the area it covered, the change to SU–1 was a rezoning. Zoning maps and related sector development plans may be amended after a public hearing on the basis of plans, ordinances and policies adopted by the City Council. Albuquerque Zoning Code § 14–16–4–1(C)(9). Resolution 270–1980, promulgated by the City Council, contains the policies for deciding applications for zoning map changes and changes to other zoning regulations, including the following criteria upon which a rezoning decision must be based:

B. Stability of land use and zoning is desirable; therefore, the applicant must provide a sound justification for the change. The burden is on the applicant to show why the change should be made, not on the City to show why the change should not be made.

C. A proposed change shall not be in significant conflict with adopted elements of the Comprehensive Plan or other City master plans and amendments thereto including privately developed area plans which have been adopted by the City.

D. The applicant must demonstrate that the existing zoning is inappropriate because;

(1) there was an error when the existing zone map pattern was created, or

(2) changed neighborhood or community conditions justify the change, or

(3) a different use category is more advantageous to the community, as articulated in the Comprehensive Plan or other City master plan, even though (1) or (2) above do not apply.

19. The record of the EPC meeting, at which the Milloy zoning change was first recommended, does not reflect any attempt by the applicant to meet these standards. Nor does the record demonstrate that the EPC Commissioners considered these criteria in recommending the new zoning. Although the Commissioners discussed the conflict between SU–1 and the Sector Plan, they were more concerned about the history of this zoning request and whether past problems might expose the City to legal action.[2] The findings of fact adopted by the EPC in support of the Sector Plan amendment and zoning change reflect this concern, not the criteria defined in Resolution 270–1980.

20. As a rationale for both the zoning decision and for amending the Sector Plan, the EPC issued the following findings of fact:

1. This is a unique situation because of the previous actions that have taken place on this property *and does not constitute a changed condition.*

2. The special use zone is an appropriate zone category to apply to this annexation because of unique circumstances surrounding this annexation request and is not necessarily applicable on other vacant parcels in the sector development plan area.

(Emphasis added). In addition, the EPC tried to limit the new zoning to this property:

3. This zoning is being proposed as a compromise solution to a series of compounded errors over the past year and a half and is not in any way to be construed as setting a precedent for other lands in this immediate area.

Findings supporting the amendment of the Sector Plan also attempted to limit the zoning change to this one parcel of land:

3. This amendment [to] the Old Town Sector Development Plan is to apply to the Villa Del Rio Subdivision alone. It is not intended to apply to other lands within this sector plan. This is a special situation and this Commission

reaffirms commitment to RA–1 zoning for lands annexed in this general area.

21. At the public hearing on the annexation and zoning changes, the City Council adopted the following finding in Resolution 45 to justify amending the Sector Plan:

WHEREAS, the special use zone is an appropriate zone category to apply to Lots 1–40, Villa Del Rio Subdivision because of unique circumstances surrounding the previous County approvals for this subdivision and is not necessarily applicable on other vacant parcels in the sector development plan area.

Here again, the City gave no apparent consideration to the rezoning criteria defined in Section D of Resolution 270–1980, but instead attempted to limit the effect of the rezoning to this property alone as a unique situation. The findings of a unique circumstance and a compromise solution do not track the criteria necessary to justify rezoning. We would consider affirming the City if the record contained other evidence that the appropriate criteria were satisfied. *See Muller v. City of Albuquerque,* 92 N.M. 264, 266, 587 P.2d 42, 44 (1978). Unfortunately, the record of proceedings below fails to show substantial compliance with the City's own requirements. Nevertheless, the City maintains that the findings of fact made by the EPC and the City Council in support of the zoning change were sufficient to comply with the requirements of Resolution 270–1980, specifically with either Section D(2) or D(3).

*Section D(2). Changed Neighborhood Condition*

22. Under Resolution 270–1980, a rezoning proponent has the burden of showing that changes in neighborhood or community conditions have occurred that justify the proposed change. *Accord Davis v. City of Albuquerque,* 98 N.M. 319, 321, 648 P.2d 777, 779 (1982); *see Miller,* 89 N.M. at 506, 554 P.2d at 668. As the Court stated in *Miller,* the proponent must show that, since the original zoning, changes have occurred in the

---

**2.** There are references in the record to the parties wishing to avoid a lawsuit and the City desiring to correct what may have been an unfair representation to Milloy as to what zoning would

apply upon annexation. Avoiding litigation appears to have been the driving force behind the City's efforts to achieve a compromise rezoning.

character of the neighborhood extensive enough to justify the proposed change. 89 N.M. at 506, 554 P.2d at 668. In this case there was no evidence of changed circumstances after the 1988 amendment to the Sector Plan that would justify a density greater than RA–1 zoning. The City does cite examples of existing higher density in the area, but these uses—mobile home parks and publicly subsidized apartment housing— were already in place when the Sector Plan was adopted and therefore cannot be "changed neighborhood or community conditions" within the meaning of Resolution 270– 1980. In fact, the Sector Plan expresses concern about this same high density development, observing that the Old Town area already had the maximum number of subsidized housing units and that additional mobile home parks should not be permitted. Not only did the City fail to show the changed circumstances required by Resolution 270–1980(D)(2), the EPC's actual findings concede the contrary; namely, that the zoning change to SU–1 does *not* constitute a changed condition but is simply a response to a unique situation. No such criteria for rezoning exists in the City code.

23. The City maintains that *Miller* and *Davis* apply only to rezonings, specifically downzoning when the property owner complains, and thus are not applicable to this case. This case, the City argues, is controlled by *Watson v. Town of Bernalillo,* 111 N.M. 374, 805 P.2d 641 (Ct.App.1991). We reject the City's narrow application of *Miller* and *Davis* and consider its reliance on *Watson* to be unwarranted. *Watson* also involved an annexation and concurrent rezoning to permit the construction of a manufacturing plant, which was objected to by neighboring residents. *Watson,* 111 N.M. at 375, 805 P.2d at 642. The Court determined that the proposed rezoning would be in accordance with the comprehensive zoning plan for Bernalillo. *Id.* at 381, 805 P.2d at 648. In this case, unlike *Watson,* the increased density of the proposed SU–1 rezoning is not in accordance with the comprehensive plan for the area, the Sector Plan. The Sector Plan stated that land annexed into the city should be zoned RA–1 to maintain the existing semi-rural character of the western portion of the area. In contrast to *Watson,* the Sector Plan was amended to suit the City's purposes in approving this rezoning.

*Section (D)(3). More Advantageous Use*

24. The City contends that SU–1 zoning would be more advantageous to the community. To support this argument, the City compares the proposed SU–1 density, permitting approximately 19 lots, to that of the special use permit previously granted by Bernalillo County that would have permitted up to 40 lots on the property. For this argument to be credible, however, the County zoning would have to continue in effect after annexation. Clearly this is not the case.

25. As a general rule, zoning regulations and ordinances of the municipality extend to the newly added territory immediately upon annexation. *Sandoval County Bd. of Comm'rs v. Ruiz,* 119 N.M. 586, 590, 893 P.2d 482, 486 (Ct.App.1995) (after annexation into the village, defendants were no longer required to comply with county ordinances, but were subject to the village zoning subdivision ordinances). *See generally* N.M.Att'y Gen.Op. 83–6, at 37 (1983); E. LeFevre, Annotation, *What Zoning Regulations are Applicable to Territory Annexed to a Municipality,* 41 A.L.R.2d 1463 (1955). Upon annexation into Albuquerque the property lost its county zoning and became subject to the RA–1 zoning specified in the Sector Plan. The City did not show that SU–1 was more advantageous to the community than RA–1, the lower density selected in the Sector Plan. RA–1 density is the very advantage the citizens bargained for in 1988 when the Sector Plan was amended to reduce the allowable density upon annexation.

*Deference Due the City's Zoning Decision*

26. The City argues that zoning actions undertaken by the City Council are entitled to deference. *See Downtown Neighborhoods Ass'n,* 109 N.M. at 189, 783 P.2d at 965. Deference is generally accorded an agency's interpretation of its own enactments because of the agency's superior expertise,

knowledge, and resources. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 39, 888 P.2d 475, 485 (Ct.App.), *certs. denied*, 119 N.M. 20, 888 P.2d 466 (1994). However, the deference given is only that which is due. As we stated in *High Ridge Hinkle Joint Venture*,

> a court should not defer if the agency, rather than using its resources to develop the facts relevant to a proper interpretation, ignores the pertinent facts, or if the agency, rather than using its knowledge and expertise to discern the policies embodied in an enactment, decides on the basis of what it now believes to be the best policy.

*Id.; see also Miller*, 89 N.M. at 507, 554 P.2d at 669 (the failure of the EPC to comply with its own published procedures was fatal to the decision). *Cf.* 2 E.C. Yokley, *Zoning Law and Practice* § 11–3, at 93 (4th ed. 1978) ("No proposition of zoning law is better settled than that a municipality has the right to amend its zoning ordinance where the amendment is reasonable and follows the procedure prescribed by the enabling legislation."). The City may not ignore or revise its stated policies and procedures for a single decision, no matter how well-intentioned the goal may be.

## CONCLUSION

27. We hold that the City's actions were arbitrary and capricious because they failed to comply with the requirements for zoning map and sector plan amendments. Because of our holding we do not address the parties' arguments concerning spot zoning. For this reason, the judgment of the district court is reversed and we remand to the district court with instructions to remand to the City for further proceedings consistent with this opinion.

28. **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.