1998-NMCA-123

964 P.2d 192

**HUNING CASTLE NEIGHBORHOOD ASSOCIATION, a New Mexico Non-profit Corporation, Petitioner–Appellant,**

v.

**CITY OF ALBUQUERQUE, a New Mexico Municipal Corporation, and Cauwels Construction & Development, Inc., a New Mexico Corporation, Respondents–Appellees.**

No. 18439.

Court of Appeals of New Mexico.

July 24, 1998.

Certiorari Denied Aug. 27, 1998.

Hessel E. Yntema, III, Oman, Gentry & Yntema, P.A., Albuquerque, for Appellant.

Robert M. White, City Attorney, David Suffling, Assistant City Attorney, Albuquerque, Antoinette Sedillo Lopez, Albuquerque, for Appellee, City of Albuquerque.

Arthur O. Beach, Thomas C. Bird, Keleher & McLeod, P.A., Albuquerque, for Appellee, Cauwels Construction & Development, Inc.

## OPINION

DONNELLY, Judge.

{1}   Huning Castle Neighborhood Association (HCNA) appeals from a judgment of the district court affirming decisions by the Albuquerque City Council to rezone a narrow strip of property and approving a site development plan for a proposed apartment complex which would extend in part upon the

rezoned parcel. On appeal, HCNA raises two issues: (1) whether sufficient evidence supports the City Council's determination that a mistake had been made in omitting the parcel from a prior zoning decision, thereby justifying a change in the zone designation for the parcel; and (2) whether the sector development plan applicable to the parcel and the surrounding property permits the apartment unit density figure approved by the City Council for the complex. We affirm the judgment of the district court on both issues.

## FACTS AND PROCEDURAL POSTURE

{2} On March 29, 1996, Cauwels Construction and Development, Inc. (Cauwels) applied to the City of Albuquerque (City) for an amendment to the municipal zoning map, a corresponding amendment to the applicable sector development plan, and approval of a site development plan. The site development plan proposed construction of a three-story apartment complex on a 2.644–acre site located near the Old Town area of Albuquerque, New Mexico. The site consists of four contiguous properties described as Lots 1, 8, 9, and a portion of Lot 10, Block 1, Huning Castle Addition located on Central Avenue between Laguna Boulevard and Fifteenth Street. The 20′ × 140′ (the Strip) portion of Lot 10 abuts the southern property lines of Lots 8 and 9.

{3} The Strip of Lot 10 has been historically owned in common with Lots 1, 8, and 9, and for many years those other lots have been zoned for commercial use. The remainder of Lot 10 has a different owner and is under residential use. Notwithstanding common ownership of the Strip with the adjacent lots for commercial use, the entire Lot 10, including the Strip, has historically been zoned residential. The City contends this was due to a mapping error and that otherwise the Strip would have been zoned commercially like the other lots commonly owned as a commercial unit.

{4} At the June 20, 1996, hearing before the City's Environmental Protection Commission (EPC), Cauwels presented evidence that the EPC has followed a policy of zoning property to the property lines, referring to the lines separating property owners, and

Cauwels argued that the failure of the City to include the Strip portion of Lot 10 in the 1981 rezoning was a mistake. Cauwels also pointed out that setback requirements under the R–1 zone designation prevented any residential construction on the Strip and therefore if its request was not granted, the property would be rendered effectively unusable. In contrast to the position of Cauwels, HCNA argued that the Strip was intentionally left as a buffer between residential use in the remainder of Lot 10 along with other houses in the neighborhood, and the planned commercial development on Lots 1, 8, and 9 to the north. HCNA argues that placement of the Strip within the residential zone was not a mistake and that substantial evidence does not support a finding that it was a mistake.

{5} Both the EPC and the Land Use Planning and Zoning Commission approved Cauwels' site development plan for construction of the apartment complex. Approval was also given for rezoning of the Strip portion of the property belonging to the owners of the land sought to be developed.

{6} HCNA filed two separate appeals to the City Council, one regarding the EPC's approvals of the Sector Development Plan amendment and zone map amendment and the other regarding the site development plan approval. On August 14, 1996, a hearing was held before the City Council's Land Use Planning and Zoning Commission on both appeals. Following the hearing, the Planning and Zoning Commission recommended that the City Council deny HCNA's appeals.

{7} On August 19, 1996, the City Council voted to accept the Planning and Zoning Commission's recommendation to rule on both appeals without further hearing, and HCNA subsequently appealed the City Council's rulings to the district court. Following a hearing in the district court, the court denied the appeal; HCNA has filed a timely appeal therefrom.

## DISCUSSION

### Standard of Review

{8} Zoning actions are quasi-judicial in nature and a reviewing court applies

an administrative standard of review. *See West Old Town Neighborhood Ass'n v. City of Albuquerque*, 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529; *see also Miles v. Board of County Comm'rs*, 1998–NMCA–118, ¶ 9, ─── N.M. ───, 964 P.2d 169 (discussing distinction in zoning context between a legislative enactment and a fact-based adjudicative act). Under this standard, we review the whole record, "looking at all the evidence, favorable and unfavorable, bearing on a decision" by the zoning body in order to ascertain if there is substantial evidence to support the result. *West Old Town Neighborhood Ass'n*, 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529. In this respect, "[a]n appellate court conducts the same review as the district court," and the decision of the zoning body is disturbed only if the court is not satisfied that the action was authorized by law or if the zoning authority's decision is not supported by substantial evidence. *Siesta Hills Neighborhood Ass'n v. City of Albuquerque*, 1998–NMCA–028, ¶ 6, 124 N.M. 670, 954 P.2d 102 (while conflicting evidence is not disregarded, the evidence is reviewed in a light favorable to the administrative body, and the reviewing court declines to substitute its judgment for that of the administrative body).

### Claim of Mistake

■ {9} HCNA contends that, in order for Cauwels to prevail on its request for rezoning, Cauwels had to prove that there was a mistake in the "initial" or "original" zoning of the Strip portion of Lot 10 and that proof of any subsequent failure by a zoning body to include a parcel of property in a rezoning action cannot legally constitute a zoning mistake. Following up on this argument, HCNA asserts that, in New Mexico, "there is the presumption that the initial determination of the type of zoning for the property involved is the correct one[,]" *Miller v. City of Albuquerque*, 89 N.M. 503, 506, 554 P.2d 665, 668 (1976), and that "[a]bsent a showing that the original zoning was mistakenly listed as a different zone than that intended due to clerical error, oversight, or misapprehension of the facts, the original zoning is deemed to be correct." *Davis v.*

*City of Albuquerque*, 98 N.M. 319, 321, 648 P.2d 777, 779 (1982). Although we agree with HCNA's analysis of the law, we disagree that the facts or evidence compel the result sought by it herein.

{10} In 1932 all of Lot 10, including the Strip in question here, was conveyed by the developer of the Huning Castle Addition to June Black. In 1938 June Black conveyed the same strip back to the developer, whose principals were A.R. Hebenstreit and William Keleher. In its report on the proposed apartment complex, the EPC noted that "[e]vidence has been provided that indicates that this strip of property has been owned in combination with [L]ots 8 and 9 (to the north) since 1938."

{11} The record is silent as to when zoning was first established in the Huning Castle Addition area. Apparently the zoning occurred some time subsequent to 1938. The record does disclose that Lots 8 and 9 were zoned C–2 with the establishment of zoning and that the Strip portion of Lot 10 was not zoned C–2 with Lots 8 and 9, but R–1 with the rest of Lot 10. In 1981 the City Council, responding by resolution to concerns that "the Huning Castle and Raynolds Addition area ... was originally zoned inappropriately," adopted the Huning Castle & Raynolds Addition Neighborhood Sector Development Plan (Sector Development Plan). Pursuant to the Sector Development Plan, Lots 1, 8, and 9 were rezoned SU–2/CLD to allow "COMMERCIAL and/or LOW DENSITY APARTMENTS" uses. The resulting zone map, however, indicates that the Strip portion of Lot 10 was not rezoned with adjoining Lots 8 and 9, but instead remained zoned as R–1 with Lot 10.

■ {12} Does the record here embody sufficient evidence to support the decision of the City Council and its determination that the failure to include the Strip of Lot 10 in the original rezoning decision was an oversight or a mistake? We conclude that it does. In our view, *Davis* and *Miller*, relied upon by HCNA, simply acknowledge that a zoning body may err when it *assigns* a particular zone designation to a particular piece of property or area through clerical error,

oversight, or misapprehension of the facts, though the presumption is against such a mistake. Clerical error, oversight, or misapprehension of the facts may, however, cause a zoning body to err and *fail to assign* a particular zone designation to a particular piece of property or area, as Cauwels has alleged was the case in 1981 when the City Council failed to rezone the Strip portion of Lot 10 SU–2/CLD when it rezoned Lots 8 and 9. Few would deny that an administrative body, just as any other entity, may at times act or fail to act upon a mistaken premise or oversight. *See Black's Law Dictionary* 1001 (6th ed.1990) (mistake is an "unintentional ... omission, or error"); *see also Reinbacher v. Conly,* 141 A.2d 453, 456–58 (Del.Ch.1958) (where the zoning commission apparently failed to rezone the petitioner's business property to its property lines, "zoning authorities have power to correct their own errors"); *cf. Lucero v. Yellow Freight Sys., Inc.,* 112 N.M. 662, 666, 818 P.2d 863, 867 (Ct.App.1991) (judge's failure to enter compensation order in accordance with ruling at hearing held "mistake" or "inadvertence"). Although there is a presumption against a claim of omission or error in zoning action of a municipal body, the presumption is nonetheless rebuttable. *See Davis,* 98 N.M. at 320, 648 P.2d at 778; *Miller,* 89 N.M. at 506, 554 P.2d at 668. *See also* Albuquerque, N.M., Code of Resolutions, Policies for Zone Map Change Applications § 1–1–2(B) (Resolution 270–1980, approved December 30, 1980) ("[B]urden is on the applicant to show why the [zoning] change should be made, not on the City to show why the change should not be made.").

{13} HCNA also argues that, even if an applicant for rezoning is allowed to present evidence seeking to establish that a mistake in a rezoning subsequent to the original zoning of the parcel has occurred, the applicant must prove the alleged mistake by "'strong'" or "'compelling'" evidence. In arguing that the standard should be a high one, HCNA, among other things, relies on authority from Maryland. *See, e.g., Bellanca v. County Comm'rs of Kent County,* 86 Md. App. 219, 586 A.2d 62, 68 (Md.Ct. Spec.App.1991) (county commissioners can approve application only if the evidence pro-

duced by appellants was not only compelling, but constituted "'strong evidence' that the classification was a mistake[.]" (citations omitted)).

{14} In contrast to the standard of proof urged by HCNA, we think that the applicable standard of proof justifying the approval of an application for a zone map change or correcting a prior mistake, is a showing that there is a reasonable basis for doing so. *See Watson v. Town Council of Town of Bernalillo,* 111 N.M. 374, 376, 805 P.2d 641, 643 (Ct.App.1991). In *Watson* the Bernalillo Town Council approved an application for rezoning of the subject parcel to permit construction of a gypsum wallboard manufacturing plant, and on appeal this Court stated, "The decision of the Council will be upheld if there is sufficient relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Id.* Applying the same standard here to the record before us, we conclude that the City Council reasonably approved Cauwels' application for a zone map change and authorized an amendment to the Sector Development Plan based upon Cauwels' showing of mistake. Cauwels provided testimony that the City "always zoned lines through to the property lines" and that in this instance it failed to do so without any apparent reason to deviate from this practice. Cauwels also asserted that it would be unreasonable for the City to purposely zone contiguous sections of an owner's property differently where the result would be that one portion would be rendered unusable under its R–1 zone designation. HCNA argues that Cauwels' evidence of mistake is merely "conjecture" and that "allegations ... that the zoning 'must' be or 'must have been' a mistake" is insufficient to prove a mistake. Under this standard of review, however, we will not reverse a district court decision regarding its review of an administrative body's determination unless it appears that the conclusion reached by that court cannot be sustained either by the evidence *or reasonable permissible inferences* arising therefrom. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces,* 1997–NMCA–044, ¶ 7, 123 N.M. 329, 940 P.2d 177. Like the district court, under the cir-

cumstances presented here, we cannot say the action of the City Council in concluding that a mistake had occurred was unreasonable or was unsupported by the evidence.

{15} HCNA advances several additional arguments which we find to be without merit. First, HCNA asserts that the common ownership of Lots 8, 9, and the Strip portion of Lot 10 is based on "undocumented assertions" by the City and Cauwels and that, therefore, the City Council's approval of the zone change is not supported by substantial evidence. We note, however, that at the Planning and Zoning Commission hearing on August 14, 1996, Mike Keleher, William Keleher's son, testified that the Hebenstreit and Keleher families had been the only owners of the parcels on the site project since the time the area had first been platted. Additionally, HCNA itself submitted a letter from 1977 opposing construction of a Lota Burger restaurant on Lots 8, 9, and the Strip portion of Lot 10, which stated that Mrs. Hebenstreit "had been paying taxes as well as cutting weeds in that parcel for 50 years or more." In light of this evidence and reasonable inferences which may be drawn therefrom, we think that the City Council acted reasonably in approving Cauwels' application for a zone change and that the failure to zone the small parcel was an oversight. On appeal from an administrative body's determination, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached ." *Las Cruces Prof'l Fire Fighters*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

{16} Secondly, HCNA argues that the fact that in 1977 the City denied a zone change request on the Strip from R–1 to C–2 constitutes evidence that the City did not make a zoning mistake. However, HCNA presented no evidence that the 1977 application was rejected for failure of the applicant to show mistake. Cauwels' burden was not to rebut every piece of evidence presented by HCNA but simply to present sufficient evidence providing a reasonable justification for approving the proposed zone change. Similarly, we think the City Council could reasonably reject HCNA's undocumented claim that, in 1977, "the City and the neighborhood

agreed at that time that all R–1 designations would be retained."

{17} Lastly, HCNA asserts that evidence presented by it showing the existence of restrictive covenants in the neighborhood, which bind the property owners to single-family residential uses, supports its contention that the City was not mistaken in not rezoning the Strip in 1981. HCNA concedes, however, that public zoning bodies are not bound by restrictive covenants. *See Singleterry v. City of Albuquerque*, 96 N.M. 468, 472, 632 P.2d 345, 349 (1981). The district court could properly determine that this evidence did not require reversal of the City Council's decision.

*The Sector Development Plan*

{18} At the EPC hearing on June 20, 1996, in addition to the dispute concerning the alleged mistake in zoning of the Strip, HCNA also questioned whether the application of Cauwels would exceed the permissible density of apartment units at the proposed site under the Sector Development Plan. HCNA contended that the Sector Development Plan "does not address the question of dwelling units per acre" and argued that the only definition of "low density apartments" in the Albuquerque Zoning Code was in relation to the residential garden apartment zone, in which density levels are not to exceed 20 dwelling units per acre. Cauwels, on the other hand, argued that the Sector Development Plan specifically allows uses that are permissive in R–2 zones, that, in R–2 zones, density levels of 30 apartments per acre are authorized, and that the proposed apartment complex has a density of approximately 27.6 units per acre.

{19} Following the hearing, the EPC issued its decision approving Cauwels' application to amend the Sector Development Plan, and finding that:

1. The request would rezone the northeastern 20 foot strip of Lot 10 from R–1 to SU–2/CLD. This property is located within the Huning Castle and Raynolds Addition Neighborhood Sector Development Plan area.

2. The request is consistent with the Huning Castle and Raynolds Addition Neighborhood Sector Development

Plan in that the requested SU–2/CLD zoning provides appropriate controls to minimize impacts from commercial and residential activities on the adjacent residential area.

3. *The applicant has demonstrated justification consistent with the requirements of Resolution 270–1980 for a zone map amendment from R–1 to SU–2/CLD based on an error in mapping which did not reflect the ownership of this property which has been in place since 1938.* [Emphasis added.]

The decision letter also noted EPC's approval of the related zone map amendment, based on the following findings:

1. This request is consistent with the Comprehensive Plan infill policies and with policies articulated in the Huning Castle and Raynolds Addition Neighborhood Sector Development Plan.

2. The applicant has demonstrated justification consistent with the requirements of Resolution 270–1980 for a zone map amendment from R–1 to SU–2/CLD based on an error in mapping which did not reflect the ownership of this property which has been in place since 1938.

Additionally, the decision approved Cauwels' site development plan, stating:

FINDINGS—Site Development Plan:

1. This is a request for Site Development Plan Approval for a 2.7 acre site for a proposed 73–unit apartment complex.

2. Off-site improvements required by the Traffic Engineer and by the Transit Department can be accomplished without disrupting the basic design of the site plan.

3. Modifications required by the Traffic Engineer to improve vehicular and pedestrian circulation can be accomplished without impacting the plans [sic] conformance to City policies.

4. *The submitted site plan generally conforms to City standards and requirements.*

CONDITIONS:

1. Comments of the Transportation Division, Transit Department and the Environmental Health Department shall be met.

2. The landscape buffer on the south property line should be enhanced to minimize the impact of this development on adjacent residences by providing a 15 foot buffer area at minimum.

3. Pedestrian access shall be provided on Laguna Boulevard and 15th Street, and there shall be a sidewalk connecting the two pedestrian accesses.

4. Replat the property for consistency with the site plan. [Emphasis added.]

{20} HCNA contends that the decision by the City Council to approve Cauwels' site development plan is based upon an erroneous interpretation of the Sector Development Plan, in that it impermissibly permits a density of 27 apartment units per acre on the proposed site. We disagree. HCNA concedes that, under the SU–2/CLD zone designation, the Sector Development Plan allows "Uses permissive in the R–2 Zone of the Comprehensive City Zoning Code." HCNA asserts, however, that the 30 dwelling units per acre density level authorized in an R–2 zone, *see* Albuquerque, N.M., Code of Ordinances ch. 14 § 14–16–2–11 (1995), is "medium density" and that, therefore, the Sector Development Plan does not contemplate R–2 zones for "low density" apartment uses. Belying this assertion, however, is the fact that the legend of Map 6 of the Sector Development Plan, showing the "PROPOSED ZONING" for the area, specifically designates "R–2" as the proper zone for "LOW DENSITY APARTMENTS[.]" Under these facts, we cannot say the City Council erred in interpreting the Sector Development Plan. *See Hyde v. Taos Mun.–County Zoning Auth.,* 113 N.M. 29, 30, 822 P.2d 126, 127 (Ct.App.1991) ("This court, as well as the district court, must review the actions taken by the TMZA with deference to the interpretation it gives to its own ordinance.").

*CONCLUSION*

{21} The judgment of the district court is affirmed.

{22} IT IS SO ORDERED.

BOSSON and WECHSLER, JJ., concur.