Hillsborough-southern judicial district
No. 2000-131

SUZANNE MARCHAND & a.

v.

TOWN OF HUDSON

December 31, 2001

*Prunier & Leonard, P.A.*, of Nashua (*Andrew A. Prolman* on the brief and orally), for the plaintiffs.

*Donahue, Tucker & Ciandella*, of Exeter (*John J. Ratigan* and *Susan W. Chamberlin* on the brief, and *Mr. Ratigan* orally), for the defendant.

*Bolton Law Offices, P.A.*, of Nashua (*Steven A. Bolton* on the brief), and *Michael N. Raisbeck*, of Chelmsford, Massachusetts, on the brief and orally, for the intervenor, Jeremy L. Muller.

*Booth, Freret, Imlay & Tepper*, of Washington, D.C. (*Christopher D. Imlay* on the brief), for The American Radio Relay League, Inc., as *amicus curiae*.

BROCK, C.J. The defendant, the Town of Hudson (town), appeals from a Superior Court (*Brennan*, J.) order rescinding a building permit granted to the intervenor, Jeremy L. Muller. The town argues that the court misapplied the law on accessory uses and ordered relief that conflicted with federal objectives to allow and promote amateur ham radio facilities. We affirm in part, reverse in part, vacate and remand.

Muller resides in a section of Hudson zoned Residential-Two (R-2), and is an amateur or "ham" radio operator. In December 1998, when Muller applied for a building permit, the town had no regulations restricting the number or height of amateur radio towers. The town zoning administrator granted Muller a building permit to erect three ninety-foot amateur radio towers with antennae to be added at a later date that would bring the total height of each tower to one hundred feet.

Shortly thereafter the plaintiffs, Suzanne Marchand, Joanne Radziewicz and Peter Radziewicz, Muller's neighbors, appealed the grant of the building permit to Hudson's zoning board of adjustment (ZBA), arguing that radio communications towers were not permitted in the R-2 zone. Following a hearing on the merits, the ZBA upheld the grant of the building permit. In support of its decision, the ZBA made the following findings:

1. The Hudson Zoning Ordinance, in listing accessory uses, does not use the word "only" for items permitted; since it is a permitted accessory use, site plan is not required.
2. RSA 674:16; 17; III: we do not get to prohibit Hamm [*sic*] radio.
3. Historically, Hamm [*sic*] radio has been an accessory use, with no quantification of type; simply an accessory to residential property-as a hobby;
4. This is a permitted accessory use.

Following a rehearing at the plaintiffs' request, the ZBA upheld its decision. The plaintiffs appealed to the superior court.

The superior court did not hold a hearing, but relied on the ZBA's certified record to evaluate the ZBA's decision. The court ruled that while the ZBA heard sufficient evidence to establish ham radio as an accessory use in residential districts in the town, "there was no evidence of ham radio operations in residential neighborhoods which included anything reasonably close to the scale of the three antennae proposed in this case." The court also addressed whether the federal government had preempted local regulation in this area, *see Amateur Radio Preemption*, 101 F.C.C. 2d 952 (1985), and concluded that the size and height of the towers "would upset the balance between the federal interest in promoting amateur

operations and the legitimate interest of local governments in regulating local zoning matters." The court therefore reversed the ZBA decision, rescinded the building permit and ordered the towers removed.

The trial court's review of the ZBA decision is governed by RSA 677:6 (1996). Pursuant to this statute, to the extent that the ZBA made findings upon questions of fact, these findings are deemed *prima facie* lawful and reasonable, and the superior court shall not set aside or vacate the ZBA's decision "except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable." RSA 677:6. On appeal, the superior court's decision will be upheld unless it is not supported by the evidence or is legally erroneous. *Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997).

We first address the town's argument that the superior court erred when it failed to uphold the ZBA's conclusion that the building permit was properly issued as an accessory use under the town zoning ordinance.

The interpretation of a zoning ordinance and the determination of whether a particular use is an accessory use are ultimately questions of law for this court to decide. *KSC Realty Trust v. Town of Freedom*, 146 N.H. 271, 273 (2001) (quotations omitted). The town's zoning ordinance expressly permits, as an accessory use, "[t]raditional secondary accessory uses and structures, including garages, toolsheds, parking areas, recreational facilities, outdoor in-ground swimming pools and other customary uses and structures." TOWN OF HUDSON ZONING ORDINANCE Table of Permitted Accessory Uses (1996). The ordinance defines accessory use as "[a]ny use which is customary, incidental, and subordinate to the principal use of a structure or lot." TOWN OF HUDSON ZONING ORDINANCE § 334-6 (1996).

■ We have generally held that the language "customary, incidental and subordinate" requires that the accessory use be minor in relation to the permitted use, bear a reasonable relationship to the primary use, and have been habitually established as reasonably associated with the primary use. *See Becker v. Town of Hampton Falls*, 117 N.H. 437, 440 (1977); *see also Hannigan v. City of Concord*, 144 N.H. 68, 71 (1999); *Nestor v. Town of Meredith*, 138 N.H. 632, 634 (1994); *Narbonne v. Town of Rye*, 130 N.H. 70, 73 (1987). An aggregation of incidental uses, however, may result in the loss of "accessory" status. *See Perron v. Concord*, 102 N.H. 32, 35-36 (1959). If the scope and significance of the proposed use is at least equal to the permitted residential use, the proposed use may no longer be subordinate or incidental and thus not permitted as an accessory use. *See id.; Gratton v. Pellegrino*, 115 N.H. 619, 621 (1975).

The plaintiffs have not challenged the ZBA's finding that historically, ham radio antennae have been permitted as an accessory use in the town. Rather, they argued to the superior court, and now argue on appeal, that there was no evidence presented to the ZBA to support the position that three 100-foot towers are a customary, accessory use in the R-2 zone. The superior court found that, given the scale of the proposed towers, they no longer qualified as accessory uses under the Hudson Zoning Ordinance. We agree.

The ZBA minutes reflect that a number of town residents stated that they had amateur radio towers. One resident stated that he had a seventy-foot tower attached to his house, and another stated that her neighbors had a 100-foot tower at their house. There was no evidence presented, however, that there exist in Hudson three, or even two 100-foot radio towers which are accessory to a residence. Indeed, as the superior court noted, "[T]here was no evidence of ham radio operations in [any] residential neighborhoods which included anything reasonably close to the scale of the three antennae proposed in this case." We therefore agree with the superior court that, to the extent the ZBA decision rested upon the conclusion that the construction of three 100-foot amateur radio towers qualified as an "accessory use" under the ordinance, it is unreasonable. *Cf. City of Knoxville v. Brown*, 260 S.W.2d 264, 269 (Tenn.1953).

We turn now to the town's argument that the superior court erred as a matter of law when it ordered relief that conflicted with federal objectives to allow and promote amateur ham radio facilities. According to the town, the superior court's order to remove all three radio towers, thereby preventing all ham radio operation by Muller, fails to preserve the FCC's legitimate interest in promoting amateur radio operations. We agree.

Because a municipality's power to zone property to promote the health, safety and general welfare of the community is delegated to it by the State, the municipality must exercise this power in conformance with the enabling legislation. *See Britton v. Town of Chester*, 134 N.H. 434, 441 (1991). RSA 674:16 grants municipalities the power to enact zoning ordinances, but expressly prohibits any such ordinance that fails to conform "to the limited federal preemption entitled *Amateur Radio Preemption*, 101 FCC 2nd 952 (1985) issued by the Federal Communications Commission." RSA 674:16, IV (Supp. 2000). The limited preemption to which the statute refers is a limited preemption of state and local regulations governing amateur radio station facilities, including antennae and support structures designed to protect the "strong federal interest in promoting amateur communications." *Amateur Radio Preemption*, 101 F.C.C. 2d 952, 959-60 (1985). The FCC codified the

central holding of *Amateur Radio Preemption,* the FCC Memorandum Opinion referred to in RSA 674:16, IV, when it revised its amateur radio rules to provide as follows:

> Except as otherwise provided [by the regulations], a station antenna structure may be erected at heights and dimensions sufficient to accommodate amateur service communications (State and local regulation of a station antenna structure must not preclude amateur service communications. Rather, it must reasonably accommodate such communications and must constitute the minimum practicable regulation to accomplish the state or local authority's legitimate purpose).

47 C.F.R. § 97.15(b) (2000).

In light of the FCC's clear directive that "[s]tate and local regulations that operate to preclude amateur communications in their communities are in direct conflict with federal objectives and must be preempted," *Amateur Radio Preemption,* 101 F.C.C. 2d at 960, we agree with the town that the superior court erred when it ordered the towers removed. Regarding the federal preemption issue, the superior court held that the size and height of the towers "would upset the balance between the federal interest in promoting amateur operations and the legitimate interest of local governments in regulating local zoning matters." While some courts have focused on whether the municipality properly balanced its interest against the federal government's interests in promoting amateur communications, *see, e.g., Howard v. City of Burlingame,* 937 F.2d 1376, 1380 (9th Cir. 1991); *Williams v. City of Columbia,* 906 F.2d 994, 998 (4th Cir. 1990), we agree with the United States Court of Appeals for the Eighth Circuit that the federal directive requires municipalities to do more:

> PRB-1 specifically requires the city to accommodate reasonably amateur communications. This distinction is important, because a standard that requires a city to accommodate amateur communications in a reasonable fashion is certainly more rigorous than one that simply requires a city to balance local and federal interests when deciding whether to permit a radio antenna.

*Pentel v. City of Mendota Heights,* 13 F.3d 1261, 1264 (8th Cir. 1994) (citation omitted); *In the Matter of Modification and Clarification of Policies and Procedures Governing Siting and Maintenance of Amateur Radio Antennas and Support Structures,* 14 F.C.C.R. 19413, 19416 (1999)

(reconsideration pending) ("Given th[e] express Commission language [of PRB-1], it is clear that a 'balancing of interests' approach is not appropriate . . . ."). Thus, we conclude that the manner in which the superior court applied the zoning ordinance violates PRB-1.

We note, however, that while New Hampshire and federal law require municipalities to accommodate amateur communications, they do not require the town to allow an amateur operator to erect any antenna he or she desires. *See Pentel*, 13 F.3d at 1264. Instead, they require only that the town "consider the application, make factual findings, and attempt to negotiate a satisfactory compromise with the applicant." *Id.* (quotations, citation and brackets omitted).

In light of the FCC's requirement, a zoning board's fact-finding and analysis should focus, first, on whether the three towers are permitted under local zoning regulations. If, as we have determined here, they are not, the zoning board should then consider what steps must be taken to "reasonably accommodate" amateur radio communications. In making this determination, the ZBA may consider whether the particular height and number of towers are necessary to accommodate the particular ham operator's communication objectives.

There was some evidence presented to the ZBA that the tower and antenna operation "was not the typical installation, but rather was something that every ham who was interested in reliable international communication on a regular basis aspired to own." The ZBA, however, did not make any factual findings regarding whether Muller even requires the proposed three radio towers to facilitate his international ham radio operations. Therefore, we vacate the superior court's decision and remand with instructions to remand to the ZBA for proceedings consistent with this opinion.

*Affirmed in part; reversed in part; vacated and remanded.*

BRODERICK, NADEAU and DUGGAN, JJ., concurred.