2004-NMCA-001

82 P.3d 547

**Gerald L. SMITH, Plaintiff–Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS, County of Bernalillo, Defendant–Appellee,**

**Henry R. Westrich, et al., Intervenors–Appellees.**

**No. 22,766.**

Court of Appeals of New Mexico.

Oct. 22, 2003.

Certiorari Granted, No. 28,374, Dec. 19, 2003.

738

Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Appellant.

Tito D. Chavez, County Attorney, Patrick F. Trujillo, Assistant County Attorney, Albuquerque, NM, for Appellee.

C.D. Carter, III, Carter Law Firm, P.C., Albuquerque, NM, Christopher D. Imlay, Booth, Freret, Imlay & Tepper, P.C., Silver Spring, MD, for Amicus Curiae.

## OPINION

**WECHSLER, Chief Judge.**

{1} The opinion filed in this case on September 23, 2003 is hereby withdrawn and the following submitted therefor. The motion for rehearing is otherwise denied.

{2} In this appeal, we consider the proper interpretation of the Bernalillo County zoning ordinance and a related limited federal preemption doctrine as applied to the placement of two 140–foot amateur radio antenna towers. Plaintiff was given stop work notices after initially receiving approval by the County for construction of the towers. He responded by filing a declaratory judgment action in district court. After remanding the matter for administrative proceedings, the district court denied Plaintiff's requested relief, concluding that the County properly exercised its authority under the zoning ordinance and did so in a manner that did not violate the federal preemption doctrine. Plaintiff appeals, arguing that (1) amateur radio antenna towers are a permissive use not subject to height restrictions; (2) recent amendments to the zoning ordinance do not prohibit the towers; and (3) the County and district court interpretation of the zoning ordinance is invalid as a matter of law because it allows administrative exercise of legislative authority and constitutes a violation of the limited federal preemption doctrine. We affirm.

### Factual and Procedural Background

{3} Plaintiff has been involved with amateur radio operations for over 40 years and is licensed as an amateur radio operator by the Federal Communications Commission (FCC). Over the years, he has used his skills to provide emergency communications and assistance to governmental entities and military personnel. Plaintiff moved to New Mexico in 1999 and set out to find property that would allow him to continue to pursue his hobby. He testified that he looked for property that did not have any restrictions in the nature of terrain obstructions, governmental regulations, or covenants. Plaintiff also spoke with a County employee, who assured him that there would be no height restrictions. In addition, Plaintiff obtained a copy of the zoning manual, which he interpreted to specifically exclude height restrictions on amateur radio towers. With this research, in July 1999, Plaintiff purchased five acres and a home in the A–2 (rural residential) zone in the East Mountain area north of Edgewood.

{4} After purchasing the property, Plaintiff applied for a building permit for the two towers. He submitted a site plan that was prepared by a licensed professional engineer. The plan called for two towers that would each be 130 feet high, topped by 10–foot masts and secured by multiple guy wires and able to support numerous Yagi antennas. Yagi antennas are similar in design to television antennas, with a horizontal boom and a number of horizontal elements extending perpendicular to the boom. Plaintiff testified that the boom and elements could be 35 feet in length. Plaintiff testified that he chose these specifications so that he could have a strong world-wide radio signal that could also be used for local emergency communications. He also intended to participate in contests that are regularly scheduled among amateur radio enthusiasts.

{5} The County approved the plan in August 1999, and several County employees visited the site in October 1999 to confirm that the towers were being constructed in compliance with the specifications that Plaintiff submitted. Plaintiff was told that the construction was in compliance and could proceed. By late November 1999, some neighbors began to complain to County officials about the construction of the towers. In early December, County officials again returned to the property, but this time they issued a stop work notice. The County officials did not specify the reason for the notice, except for the claim that the construction "does not comply with zoning ordinance."

{6} Plaintiff obtained counsel and filed an administrative appeal of the stop work notice, thereby triggering a stay of the notice under the County building code. Without hearing the appeal, the County issued a second stop work notice, from which Plaintiff filed another appeal, which also was never heard. Plaintiff completed construction of the towers

while he pursued relief in district court. The district court denied the County's request for a temporary restraining order.

{7} Plaintiff originally made claims for declaratory relief, inverse condemnation, and damages. He ultimately limited his request to declaratory relief, and the district court remanded the matter to the County Planning Commission (CPC) so that a factual record could be developed. Specifically, the district court instructed the CPC to consider whether the towers satisfied that part of the ordinance which allowed uses that were "customarily incidental" to the primary use of the property. After a hearing, the CPC agreed that the towers were in violation of the zoning ordinance, making these findings:

1. This case is a remand from District Court to allow the County Planning Commission to review an administrative decision made regarding construction of two 140–foot amateur radio antennas at 44 Crestview Lane.

2. The zoning regulations regarding amateur radio antennas were amended by the Bernalillo County Board of County Commissioners in May 1999; these amendments became effective in June 1999.

3. With the amended zoning language, amateur radio antennas could no longer be considered as incidental uses in the A–2 zone, but would require a zone change or issuance of a Special Use Permit for a Specific Use.

4. The permit issued for construction of the two amateur radio antennas was issued in error, since the Zoning Code amendment regarding these antennas took effect approximately six weeks prior to submittal of the building permit application.

5. In order to construct the two amateur radio antennas, the owner would have to obtain either a change of zoning or a Special Use Permit for a Specific Use.

6. To date, the applicant has not applied for a zone change which would allow for the placement of the antennas on this site.

7. Two 140–foot amateur radio antennas and their related equipment are not an incidental use on the subject property.

8. Since the applicant has not applied for the proper zoning for this use and allowed this body to consider such a request, he has failed to demonstrate that the County has not reasonably accommodated his request.

9. A–2 zoning requires a higher standard of preservation of natural and scenic values than some other zones.

10. The federal guidelines speak in terms of reasonableness in height considerations.

11. The height of these towers is unreasonable for an A–2 rural zone as a customarily incidental use.

{8} The district court issued findings of fact and conclusions of law that were essentially consistent with those made by the CPC. Plaintiff appealed to this Court, and we note that the federal preemption arguments made by Plaintiff have been supplemented by an amicus curiae brief filed by the American Radio Relay League, Incorporated, which represents the interests of 650,000 radio amateurs licensed by the FCC.

*Standard Of Review*

{9} We initially address the nature of this appeal. This case was not before the district court as an appeal of a final administrative decision under NMSA 1978, § 39–3–1.1 (1999). The district court remanded this case to the CPC for a factual determination. It thereby created a proceeding within a proceeding in which the CPC issued findings after a hearing based on its record. The district court thereafter decided the issues before it affording deference to the CPC's interpretation of the zoning ordinance contained in the Bernalillo County Code. The parties do not argue that this case should be treated as an administrative appeal under Section 39–3–1.1, and we do not do so.

{10} The parties dispute the applicable standard of review. Plaintiff argues that the interpretation of an ordinance involves the same rules of construction that apply to statutes and calls for de novo appellate review.

*See Rutherford v. City of Albuquerque,* 113 N.M. 573, 574, 829 P.2d 652, 653 (1992). The County disputes that a de novo standard of review applies, referring us to cases recognizing a deferential review of administrative interpretation of ambiguous language in an ordinance. *See, e.g., High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 38, 888 P.2d 475, 484 (Ct.App.1994) (*Hinkle I* ); *West Bluff Neighborhood Ass'n v. City of Albuquerque,* 2002–NMCA–075, ¶ 41, 132 N.M. 433, 50 P.3d 182, *overruled on other grounds by Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n,* 2003– NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806. We agree that an administrative interpretation of ambiguous language might, over time, bind the agency to a particular construction of the ordinance. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998– NMSC–050, ¶ 9, 126 N.M. 413, 970 P.2d 599 (*Hinkle II* ).

 {11} In its reply brief, Plaintiff argues that the County is not entitled to anything less than a de novo review because its interpretation of the zoning ordinance was a policy determination without any administrative precedent. We only partially agree. The district court remanded the case to the CPC to interpret the "customarily incidental" provision of the zoning ordinance and to consider the federal protections given amateur radio towers. In reviewing the interpretation given the zoning ordinance by the CPC and the district court, we employ the following analysis:

The first rule is that the "plain language of a statute is the primary indicator of legislative intent." *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Courts are to "give the words used in the statute their ordinary meaning unless the legislature indicates a different intent." *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). The court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." [*Burroughs v. Bd. of County Comm'rs,* 88 N.M. 303, 306, 540 P.2d 233, 236 (1975)]. The second rule is to "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *TBCH, Inc. v. City of Albuquerque,* 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct.App.1994); *see Molycorp, Inc. v. State Corp. Comm'n,* 95 N.M. 613, 614, 624 P.2d 1010, 1011 (1981). The third rule dictates that where several sections of a statute are involved, they must be read together so that all parts are given effect. This includes amendments. *Methola v. County of Eddy,* 95 N.M. 329, 333, 622 P.2d 234, 238 (1980).

*Hinkle II,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. We do not invoke the second rule because the County has not had a long-standing interpretation of the zoning ordinance as applied to amateur radio antennas.

{12} The CPC, however, did more than interpret the zoning ordinance. It held a hearing at which interested parties had the opportunity to be heard. The CPC also had before it an administrative record which included proposed findings by Plaintiff and the County and documentation and information pertinent to the towers. Thus, the CPC determined the issues before it in a fact-based, quasi-judicial proceeding. *See Southworth v. Santa Fe Servs., Inc.,* 1998–NMCA– 109, ¶ 14, 125 N.M. 489, 963 P.2d 566 (stating that an administrative agency acts in its quasi-judicial role when it investigates or ascertains the existence of facts, holds hearings, and draws conclusions from them).

 {13} Although we review de novo the district court's acceptance of the CPC's interpretation of the "customarily incidental" provision of the zoning ordinance, the CPC's finding of unreasonableness, which was implicitly included within the district court's conclusion that the towers are not a customarily incidental use, is subject to an administrative standard of review applicable to the quasi-judicial administrative proceedings. *See Rio Grande Chapter of Sierra Club,* 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806 (holding that this Court may apply administrative standard of review even in appeal under Section 39–3–1.1, overruling *C.F.T. Development, LLC v. Board of County Commissioners,* 2001–NMCA–069, 130 N.M. 775, 32 P.3d 784); *Huning Castle Neighborhood Ass'n v. City of Albuquerque,* 1998– NMCA–123, ¶ 8, 125 N.M. 631, 964 P.2d 192

(holding that quasi-judicial zoning action was subject to administrative standard of review). Under this standard, a reviewing court reviews the whole record to determine if the administrative decision is supported by substantial evidence. *Rio Grande Chapter of Sierra Club*, 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806. Therefore, in the unusual circumstances of this case in which the district court remanded to the CPC for a factual record, if we agree that the determination of customarily incidental use includes the issue of reasonableness, we review the CPC's finding of unreasonableness for substantial evidence in the entire record. *See id.*

*Effect of the 1999 Amendments*

{14} The parties dispute the impact of amendments to the office and institutional (O–1) zone that took effect in 1999 prior to Plaintiff's submission of his building permit. Before the amendments, antennas in the O–1 zone were permitted up to 65 feet, with conditional approval up to 100 feet. Amateur and noncommercial radio towers were specifically exempted from these height regulations. In 1999, the County amended that portion of the zoning ordinance addressing "regulations for telecommunications towers, antennas and related facilities." The amending ordinance (1999 amendment) added a number of definitions and regulations concerning wireless communications and appears to have been primarily aimed at controlling the growing use of cellular telephone facilities. Significantly, the amendments changed the previously unregulated height of amateur radio antennas. The 1999 amendment subjected them to the same regulations that apply to other towers, that is, up to 65 feet, with conditional approval up to 100 feet. The 1999 amendment also provided for conditional approval of amateur radio antennas up to 100 feet in the neighborhood commercial zone.

■ {15} Plaintiff's home is in the A–2 Rural Agricultural Zone. Bernalillo County Code Zoning § 8 (1996) (Zoning Ordinance). The district court agreed with the CPC's conclusion that under the 1999 amendment amateur towers are no longer considered a permissive use in the A–2 zone, and Plaintiff would have to either seek rezoning or a special use permit. The district court concluded that because the O–1 zone limits antennas to 65 feet, it would be inconsistent with the language of the ordinance to allow antennas more than twice that height in the A–2 zone, a zone requiring a higher standard of preservation of natural scenic values. We agree with Plaintiff's argument that the adoption of the 1999 amending language in the O–1 zone does not automatically amend uses in the A–2 zone.

{16} If the County Commission intended to limit uses in the A–2 zone, it could have expressly amended the A–2 zone or amended the supplemental language exempting amateur radio towers from height restrictions. In addition, the County's suggested options do not provide Plaintiff with the type of "reasonable accommodation" required under federal law. The first option, a zone change, might constitute illegal spot zoning. *See generally Bennett v. City Council for Las Cruces*, 1999–NMCA–015, ¶¶ 17–20, 126 N.M. 619, 973 P.2d 871 (discussing spot zoning). The second option, a special use permit, is even less likely because the zoning ordinance's list of specific uses that are eligible for special use permits does not include amateur radio towers, although it does mention commercial antennas. Zoning Ordinance, *supra*, § 18(B)(26). Accordingly, we conclude that the 1999 amendment did not remove amateur radio towers as a permissive use in the A–2 zone. Because we reach this conclusion, we do not address Plaintiff's argument that the County's interpretation of the zoning ordinance contravenes the limited federal preemption on regulation of amateur radio use.

*Customarily Incidental Use*

■ {17} The primary issue in this case is whether Plaintiff's two towers, as constructed, are permissible under that portion of the zoning ordinance allowing any use that is "customarily incidental" within the A–2 zone. *Id.* § 8(B). The ambiguity in the zoning ordinance arises from the fact that it does not define "customarily incidental." However, there are a number of provisions that provide guidance. The A–2 zone is similar to the A–1 Rural Agricultural Zone except that it limits one dwelling unit for every two acres, whereas the A–1 zone allows den-

ser development with one dwelling unit per acre. *Id.* §§ 7(B)(1)(c), 8(B)(1)(a). Otherwise, all uses permitted in the A–1 zone are allowed in the A–2 zone. *Id.* § 8(B)(1)(a). These uses include any "[a]ccessory building or structure customarily incidental to [a residential dwelling]." *Id.* § 7(B)(1)(d). The A–2 zone specifies height restrictions of 26 feet or two and one-half stories for buildings and structures, except as exempted in the supplemental regulations. *Id.* § 8(C).

{18} Plaintiff refers us to the following language in the supplemental height regulations to support his contention that the zoning ordinance prohibited the County's actions: "The height regulations as prescribed in this ordinance shall not apply to: ... Amateur or noncommercial radio towers." *Id.* § 22(B)(1)(a). Other exempted structures include belfries, chimneys, church spires, silos, conveyors, cooling towers, elevator bulkheads, fire towers, flag poles, monuments, ornamental towers and spires, smokestacks, stage towers or scenery lofts, tanks, water towers, and windmills. *Id.* § 22(B)(1)(b)-(q). Plaintiff maintains that this exemption means that no height restriction may apply. We do not agree. The exemption refers to the height limit and simply means that a 26-foot height limit does not apply to the structures listed in the exemption.

{19} The independent inquiry remains as to whether the particular structure constitutes a "customarily incidental" use under the zoning ordinance. This inquiry cannot be completed without context, including the physical characteristics of the structure and the nature of the site. In other words, a structure that may be customarily incidental to a residential use at some level of scale may no longer satisfy the ordinance if it is oversized in the context of the stated purpose of the zone. The larger scale may not be reasonable as a customarily incidental use.

{20} The zoning ordinance provides guidance for what is reasonable in the A–2 zone:

The purposes of this zone are to preserve the scenic and recreational values in the National Forests and similar adjoining land, to safeguard the future water supply, to provide open and spacious development in areas remote from available public services and to recognize the desirability of carrying on compatible agricultural operations and spacious home developments in areas near the fringes of urban development.

*Id.* § 8(A). In light of this stated purpose, we reject the view that amateur radio antennas automatically either fall within the category of a customarily incidental use or not. Instead, we believe that a case-by-case application must be made, taking into consideration all of the factors unique to the site of the antennas.

{21} As such, we are not persuaded by the parties' reference to varying case law on this matter. *Compare Town of Paradise Valley v. Lindberg,* 27 Ariz.App. 70, 551 P.2d 60, 62 (1976) (holding that 90–foot tower was accessory use and within the 100–foot height limitation); *Village of St. Louis Park v. Casey,* 218 Minn. 394, 16 N.W.2d 459, 461 (1944) (holding that a 60–foot pole and other antennas were customarily incident to residential use); *Wright v. Vogt,* 7 N.J. 1, 80 A.2d 108, 110 (1951) (holding that 60–foot tower was customary incidental use); *Skinner v. Zoning Bd. of Adjustment,* 80 N.J.Super. 380, 193 A.2d 861, 865 (App.Div.1963) (holding that 100–foot tower permitted as "accessory use"); *Dettmar v. County Bd. of Zoning Appeals,* 28 Ohio Misc. 35, 273 N.E.2d 921, 922 (1971) (holding that 64–foot antenna tower was permitted, subject to ordinance restriction to lawful and safe height), *with Marchand v. Town of Hudson,* 147 N.H. 380, 788 A.2d 250, 253 (2001) (holding that it was unreasonable for zoning board to conclude that three 100–foot towers were "accessory use"); *Presnell v. Leslie,* 3 N.Y.2d 384, 165 N.Y.S.2d 488, 144 N.E.2d 381, 386 (1957) (holding that 44–foot tower was not an accessory use customarily incidental to the highly classified residential area).

{22} These cases are not helpful because they are specific to the language of the ordinances in question, and they do not involve the site-specific inquiry that we believe is contemplated by the stated purpose of the A–2 zone. Nor do they take into account the reasonable accommodation mandated by the limited federal preemption.

*Finding of Unreasonableness*

{23} The CPC found that the height of the towers is "unreasonable for an A–2 rural

zone as a customarily incidental use." We have concluded as a matter of law that reasonableness is a consideration in determining "customarily incidental" use under this zoning ordinance as well as in determining the application of federal preemption. As we have discussed, the issue of reasonableness is based upon the physical characteristics of the structure in its particular site. We review the agency's determination for substantial evidence based on the whole record. *See Huning Castle Neighborhood Ass'n*, 1998–NMCA–123, ¶ 8, 125 N.M. 631, 964 P.2d 192.

{24} The facts in the record concerning the height of the towers and the stated purpose of the A–2 zone are undisputed. As to reasonableness, Plaintiff took the position at the CPC hearing that the towers would be reasonable at any height. Neighbors stated at the hearing that the towers are "over four times the height of surrounding houses," that the towers stood "way above the mountain line" and were clearly visible from a distance of about one-half mile, that there was nothing in the area similar to the towers and that the towers detrimentally affected the scenic view, and that the towers reflected bright light toward the window of one neighbor's home. The record contained a letter from a neighbor stating that the towers and attached lines "are an eye sore that reflect the sun throughout the day and spoil views of South Mountain."

{25} Although the County Zoning Director stated at the hearing that the towers were exempted from height restrictions under a permissive use category, we have concluded that this interpretation of the zoning ordinance was incorrect. The purposes of the A–2 zone include the preservation of scenic values of the National Forest and similar adjoining land and the provision of open and spacious development. Zoning Ordinance, *supra,* § 8(A). Given the height of the towers and the stated purpose of the A–2 zone, there was substantial evidence in the record as a whole for the CPC to find that the height of the towers was unreasonable as a customarily incidental use in the A–2 zone.

*Conclusion*

{26} Although the zoning ordinance could have been drafted with language that would better assist administrative officials and courts in interpreting the scope of regulatory authority over amateur radio antennas in the A–2 zone, the zoning ordinance is sufficient for purposes of authorizing the exercise of regulatory oversight in this case. Amateur radio towers are a permissive use under A–2 zoning subject to the requirement that they be customarily incidental to the residential use. Such a determination is made on a case-by-case basis and includes a consideration of reasonableness for the A–2 zone. We hold that the district court had a proper basis for denying Plaintiff's request for declaratory relief on the finding that the two 140-foot towers are unreasonable for an A–2 zone as a customarily incidental use. Accordingly, we affirm.

{27} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.