2005-NMSC-012

110 P.3d 496

**Gerald L. SMITH, Plaintiff–Petitioner,**

v.

**BOARD OF COUNTY COMMISSIONERS, COUNTY OF BERNALILLO, Defendant–Respondent,**

and

**Henry R. Westrich, et al., Intervenors–Respondents.**

No. 28,374.

Supreme Court of New Mexico.

April 1, 2005.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Albuquerque, for Petitioner.

Tito D. Chavez, County Attorney, Patrick F. Trujillo, Assistant County Attorney, Albuquerque, for Respondent.

Carter Law Firm, P.C., Carroll D. Carter, III, Albuquerque, Booth, Freret, Imlay & Tepper, P.C., Christopher D. Imlay, Silver Spring, MD, for Amicus Curiae American Radio Relay League, Incorporated.

Rhodes & Salmon, P.C., Hazen H. Hammel, Albuquerque, for Amicus Curiae Peter Naumburg.

## OPINION

BOSSON, Chief Justice.

{1} Plaintiff Gerald Smith applied for and received a permit to build two 130–foot amateur radio towers on his residential property in the East Mountain area of Bernalillo County, New Mexico. The zoning ordinance did not expressly prohibit or restrict construction of the towers in that location, and supplementary regulations specifically exempted radio towers from height restrictions. After neighbors complained, the County changed its mind, tried unsuccessfully to stop the construction, and devised new reasons why Plaintiff's radio towers should not be allowed. The district court agreed with the County's rationale but also adopted another reason for prohibiting the towers. On appeal, the Court of Appeals rejected the first rationale but sided with the County on the second. *Smith v. Bd. of County Comm'rs*, 2004–NMCA–001, 134 N.M. 737, 82 P.3d 547. We granted certiorari and reverse.

## BACKGROUND

{2} Plaintiff is a federally licensed amateur radio operator who has engaged in "ham" radio as a hobby for more than forty years. In 1998, Plaintiff moved to New Mexico primarily to find a piece of residential property suitable for the construction of an

amateur radio antenna system. He wanted to build a system capable of achieving a strong signal so that he could communicate across the world, assist with local emergency operations, and participate in amateur radio contests. Plaintiff conducted extensive research looking for property with the right terrain and not subject to covenants or zoning restrictions that would limit the height of amateur radio antenna towers.

{3} After finding a five-acre parcel with a home in the East Mountain area of Bernalillo County that was zoned A–2 (rural residential), Plaintiff consulted several Bernalillo County zoning employees and officials, including the zoning director, about his desire to build two 130–foot towers. The County assured him that amateur radio towers were permitted on A–2 zoned property and that a regulation specifically exempted them from height restrictions. Plaintiff was told he only needed to apply for a building permit

{4} To confirm the County's interpretation, Plaintiff and his attorney both studied the Bernalillo County zoning code. According to the code, the A–2 zone includes as permissive uses one dwelling for every two acres and any accessory building or structure "customarily incidental" to "rural residential activities." *See* Bernalillo County, N.M., Zoning Ordinance §§ 7(B)(1)(a), (d), 8(B)(1)(a) (1996). The ordinance restricts the height of structures in the A–2 zone to twenty-six feet, except as provided in the supplementary height regulations. *Id.* § 8(C). The supplementary regulations expressly exempt from the height limitation a number of structures, including amateur radio towers. *Id.* § 22(B)(1) (stating that height regulations shall not apply to amateur radio towers). The ordinance does not further define "permissive use" or "customarily incidental," nor does it provide standards for determining whether something is a permissive use or is customarily incidental. The ordinance does, however, define "incidental use" as "[a] use which is appropriate, subordinate, and customarily incidental to the main use of the lot." *Id.* § 5.

{5} Plaintiff also reviewed amendments to the zoning ordinance that went into effect in June 1999. Designated Ordinance 1999–6,

the amendments were passed to regulate commercial cellular towers in Bernalillo County. *See* Bernalillo County, N.M., Zoning Ordinance 1999–6 (1999). Prior to the amendments, the County allowed an "antenna" up to sixty-five feet as a permissive use in an office and institutional zone (O–1). *See* Zoning Ordinance § 12(B)(1)(a)(1). The supplementary height regulations, however, provided that amateur radio antennas were exempt from height restrictions, which left them unregulated in the O–1 zone. *See id.* § 22(B)(1)(a). The 1999 amendments clarified that amateur radio antennas were now subject to the same height restrictions that apply to other towers in the O–1 zone. *See* Ordinance 1999–6 § 12 (allowing "antenna *amateur radio* " up to sixty-five feet as a permissive use, or up to 100 feet as a conditional use) (emphasis added). However, Ordinance 1999–6 only made changes to language in the O–1 zone. The supplementary height regulations were not amended, nor were changes made to the residential zones. Specifically, the language in Ordinance 1999–6 did not amend or modify the A–2 zone in which Plaintiff was interested for his prospective home. Accordingly, Plaintiff and his attorney concluded that, even after the amendments, the ordinance imposed no height restrictions on amateur radio towers in the A–2 zone.

{6} Based on the County's representation and his own research, Plaintiff bought the property and applied for a building permit for the two towers. He submitted a site plan that was prepared by a licensed professional engineer. The plan called for two 130–foot towers with ten-foot masts, which would support multiple antennas and be secured by guy wires. The County approved the plan and issued a building permit in August 1999, which Plaintiff posted on his property. In October 1999, county employees twice inspected the construction and told Plaintiff he was in compliance with the site plan.

{7} In late November 1999, some of Plaintiff's neighbors began to complain to County officials about the height of the towers under construction. At first, the County told the neighbors that the building permit

was in order and the time to appeal had expired, fifteen days after the permit was issued. On December 8, 1999, however, County officials arrived at Plaintiff's house with a stop work notice. The notice did not specify the nature of the problem but simply stated that the construction "does not comply with zoning ordinance." According to Plaintiff, the officials were not able to elaborate on the nature of the violation, but said they had received complaints from neighbors and needed some time.

{8} Plaintiff hired a land-use attorney who wrote two letters to the County demanding a legal reason for the stop work notice. Although County officials spoke with Plaintiff several times, it was not until January 28, 2000, that Plaintiff received a written response from the County explaining its position. In the letter, the county attorney stated that, due to the amendments made to the O-1 non-residential zone in June 1999 (Ordinance 1999-6), amateur radio towers were no longer a permissive or conditional use on Plaintiff's property. Thus, the permit, which was approved six weeks *after* those amendments became law, was now supposedly issued in error.

{9} Sanford Fish, the director of the zoning, building and planning department, testified that when he first spoke with Plaintiff about his plans he told Plaintiff that amateur radio towers were allowed as permissive or incidental uses and that language in the ordinance exempted towers from height restrictions. Fish admitted that he knew about the 1999 amendments when he first advised Plaintiff about his towers. It was not until Plaintiff's neighbors complained in phone calls, e-mails, and letters that the County decided to reassess the ordinance in light of the amendments "to make sure that we weren't missing anything." Fish testified that after a detailed review he "realized" the effect of the amendments in the O-1 zone on amateur radio towers in the A-2 zone. Now that amateur radio antennas were expressly enumerated as a permissive or conditional use in the non-residential zones, he said, such towers could no longer be considered incidental uses in the residential zones. It was now his opinion that a use expressly listed in the O-1 zone could not be a customarily incidental use in the lower A-2 zone. This was the first time Fish came to such an opinion, and it led to a result directly contrary to the position the County had previously taken.

{10} In response to the stop work notice, Plaintiff filed an administrative appeal. Interpreting the appeal as triggering a stay of the notice under the county building code, Plaintiff continued building his towers. The County issued a second stop work notice "under emergency conditions," which Plaintiff also appealed. Neither appeal was ever heard. To force Plaintiff to stop building his towers, the County requested a temporary restraining order, which the district court denied.

{11} Meanwhile, Plaintiff sought a declaratory judgment in district court that would uphold the permit and withdraw the stop work notices. In Plaintiff's view, which was previously the County's view as well, amateur radio towers are customarily incidental to residential use because they are used in conjunction with a home-based hobby. Thus, amateur radio towers qualify as a permissive use in the A-2 zone and are not subject to height restrictions in the A-2 zone. To Plaintiff, the express exclusion of amateur radio towers from height restrictions reinforced the intent that towers are considered permissive uses. Otherwise, towers would not be listed.

{12} The district court denied Plaintiff's motion for summary judgment, then remanded the matter to the Bernalillo County Planning Commission to develop a factual record regarding the County's prior interpretation of "customarily incidental" as used in the ordinance. Noting that the term was not defined, the district court directed the Planning Commission to consider whether Plaintiff's amateur radio antenna towers were "customarily incidental" to the residential use, and therefore a permissive use within the meaning of the zoning ordinance.

{13} As noted above, the County conceded that prior to 1999 it had considered amateur radio antennas as a permissive use under the ordinance but argued that Ordinance 1999-6 changed all that. The Planning Commission took the position that the

1999 amendment to the O–1 zone eliminated amateur radio antennas as incidental uses in the A–2 zone. Thus, the Planning Commission concurred with the County's administrative decision to halt construction of the towers and adopted all of the findings proposed by the planning department. But the Planning Commission also adopted three new findings:

9. A–2 zoning requires a higher standard of preservation of natural and scenic values than some other zones.

10. The federal guidelines speak in terms of reasonableness in height considerations.

11. The height of these towers is unreasonable for an A–2 rural zone as customarily incidental.

These findings were necessary to respond to another question on remand: whether the zoning ordinance made reasonable accommodation for amateur radio towers, as required by federal law. (The issue of whether federal laws protecting amateur radio towers preempt the local zoning regulations is not before as on certiorari.)

{14} Back at the district court, however, the unreasonable height of the towers in general, and not as related to federal preemption, became a new, alternative basis for the County to reject Plaintiff's plans. The district court accepted the Planning Commission's first rationale, concluding that because the O–1 zone limits antennas to sixty-five feet, it would be inconsistent with the language of the ordinance to allow antennas more than twice that height in an A–2 zone, which requires a higher standard of preservation of natural and scenic values. The district court did find that, until Plaintiff's case, the County generally had treated amateur radio towers as customarily incidental to residential activities in the A–2 zone. The court concluded, however, that even if there had been no amendments to the ordinance the County has the right to determine that certain towers were too tall, and thus unreasonable, to be considered customarily incidental to residential use. The district court entered judgment in favor of the County.

{15} Plaintiff appealed. The Court of Appeals agreed with Plaintiff, contrary to the district court, that the adoption of the 1999 amending language did *not* automatically remove amateur radio towers as a permissive use in the A–2 zone. *See Smith,* 2004–NMCA–001, ¶¶ 15–16, 134 N.M. 737, 82 P.3d 547 (stating that if the County "intended to limit uses in the A–2 zone, it could have expressly amended the A–2 zone or amended the supplemental language exempting amateur radio towers from height restrictions"). The County has not challenged that holding on certiorari, and it is not before us. However, the Court of Appeals did affirm the district court by holding that, even though amateur radio towers are expressly exempted from the height regulations, height restrictions may still apply. *Id.* ¶ 18. The court reasoned that an independent inquiry remains as to whether a particular structure is "reasonable" in a particular zone. *Id.* ¶ 19. Therefore, the County could bar an otherwise permissive use that had been expressly exempted from height regulation on the ground that the height was "unreasonable" as a customarily incidental use in a rural residential zone.

{16} We granted certiorari. On appeal, Plaintiff contends that the Court of Appeals' interpretation of the zoning ordinance is unprecedented and contrary to law because it allows county zoning officials unfettered discretion. Zoning officials now can determine whether a particular land use that otherwise complies with all zoning restrictions can nonetheless be denied solely because it is "unreasonable." This kind of boundless discretion, Plaintiff argues, opens the door to arbitrary and ad hoc decision-making by governmental officials who are supposed to make decisions according to standards and precedent. He further contends that accepting this interpretation permits the County to devise a post hoc, or after-the-fact, rationale for its decisions. In this case, Plaintiff argues, the County justified reversing its position regarding whether the towers were a permissive use based on a rationale that had never been used and had never even been articulated before Plaintiff's towers were well along in construction.

{17} The sole issue we now address is whether the County could properly grant a

permit to build amateur radio towers and later determine without ascertainable standards that the use was "unreasonable," when the County had previously interpreted the zoning ordinance to allow such structures as a permissive use without height restrictions.

# DISCUSSION

## Standard of Review

{18} Interpretation of a zoning ordinance is a matter of law that we review de novo using the same rules of construction that apply to statutes. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 4, 126 N.M. 413, 970 P.2d 599 (*Hinkle II* ); *Rutherford v. City of Albuquerque*, 113 N.M. 573, 574, 829 P.2d 652, 653 (1992). In its review of the Planning Commission's interpretation of the "customarily incidental" provision of the zoning ordinance, as accepted by the district court, the Court of Appeals relied on three rules of statutory construction. *See Smith*, 2004–NMCA–001, ¶ 11, 134 N.M. 737, 82 P.3d 547 (citing *Hinkle II*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599). First, the "plain language of a statute is the primary indicator of legislative intent." *Id.* Second, a reviewing court should "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *Id.* Third, when "several sections of a statute are involved, they must be read together so that all parts are given effect." *Id.* In our view, these same rules of statutory construction lead to a conclusion significantly different from that of the Court of Appeals.

## Plain terms of ordinance indicate amateur radio towers are exempt from height restrictions

{19} We begin by looking at the language of the ordinance itself. *Cf. State v. Johnson*, 2001–NMSC–001, ¶ 6, 130 N.M. 6, 15 P.3d 1233 ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation.")(quoted authority omitted). In interpreting an ordinance, courts give words their ordinary meaning, without adding terms the enacting body did not include, unless a different intent is indicated. *See Hinkle II*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599.

{20} Plaintiff argues that under a straightforward interpretation of the zoning ordinance, amateur radio towers are a permissive use without height limitation in the A–2 zone. In his view, amateur radio towers are permitted in A–2 zones because operating a ham radio is a hobby "customarily incidental" to rural residential activity. *See* Zoning Ordinance §§ 7(B)(1)(a), (d), 8(B)(1)(a). The ordinance does not expressly enumerate amateur radio towers as a permissive use, but it does expressly exclude them, along with a number of other structures, from the height limitation of twenty-six feet. *Id.* § 22(B)(1) (providing in the supplemental regulations that height restrictions shall not apply to amateur radio towers and other structures such as belfries, chimneys, flagpoles, smokestacks, silos, water towers, and windmills). Under the plain meaning of the words used in the ordinance, Plaintiff contends, this express exemption tends to indicate that the County contemplated amateur radio towers as permitted structures in the A–2 zone, and viewed them as customarily incidental to residential use.

{21} The Court of Appeals, on the other hand, concluded that the ordinance was ambiguous because it did not define "customarily incidental." *See Smith*, 2004–NMCA–001, ¶ 17, 134 N.M. 737, 82 P.3d 547. Rather than interpret the supplemental regulations as a blanket exemption from height restrictions, the Court of Appeals read Section 22 as simply meaning structures such as amateur radio towers were not subject to the twenty-six-foot height limitation. *Id.* ¶ 18. The court found that an independent inquiry remains as to whether the particular structure constitutes a "customarily incidental" use under the zoning ordinance, an inquiry that takes place in context, considering the physical characteristics of the structure and the nature of the site. *Id.* ¶ 19.

In other words, a structure that may be customarily incidental to a residential use at some level of scale may no longer satisfy the ordinance if it is oversized in the context of the stated purpose of the zone.

The larger scale may not be reasonable as a customarily incidental use.

*Id.* Thus, even though the ordinance specifies no height limit at all, the County could determine on a case-by-case basis what height limit should apply.

{22} Unlike the Court of Appeals, we are reluctant to make a legal conclusion that "reasonableness" can be read into the ordinance as a consideration in determining "customarily incidental" use. The court cites no authority for doing so, and the ordinance says no such thing. "A court may not legislate in the guise of construction by inserting matter in a zoning regulation not included by the legislative body." 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.71, at 223 (3d ed., rev.vol.2000). In our view, the Court of Appeals added terms to the ordinance that were not there. *See Burroughs v. Bd. of County Comm'rs,* 88 N.M. 303, 306, 540 P.2d 233, 236 (1975) (stating that we follow the plain language of an ordinance, and will not read language into it if it makes sense as written).

{23} Rather than remain silent, the County directly addressed amateur radio towers in the ordinance by exempting such structures from height restrictions. If the County intended to limit customarily incidental uses in the A–2 zone, or to limit the height of amateur radio towers and other structures, it could easily have done so in express terms. The County knew how to impose height restrictions in other zones. *See* Ordinance 1999–6; *cf. Smith,* 2004–NMCA–001, ¶ 16, 134 N.M. 737, 82 P.3d 547 (offering the same rationale to explain why the 1996 amendments to the O–1 zone did *not* automatically change height restrictions in the A–2 zone). Instead, the ordinance expressly exempted amateur radio towers from all height restrictions.

{24} We observe that the Planning Commission was not unaware of this potential problem. During the hearing on remand from the district court, the commissioners recalled that several years prior to Plaintiff's case the County zoning staff was asked to develop amendments to the ordinance addressing height regulations for amateur radio antennas above sixty-five to seventy-five feet. No action was taken. While we agree that the Planning Commission could pass regulations to restrict the height of amateur radio towers as a customarily incidental use, the Planning Commission has not done so. We will not read a reasonableness requirement into the ordinance to alleviate a problem that easily could have been avoided some time ago, particularly when the Court of Appeals cites no authority for doing so.[1]

{25} Our review of cases from other states supports Plaintiff's belief that amateur radio antennas are generally considered customarily incidental to residential use without adding a reasonableness inquiry. *See, e.g., Town of Paradise Valley v. Lindberg,* 27 Ariz.App. 70, 551 P.2d 60, 61–62 (1976)(holding that the erection of a ninety-foot amateur radio tower in conjunction with a homeowner's hobby as a ham radio operator is a permissible accessory or incidental use); *Skinner v. Zoning Bd. of Adjustment,* 80 N.J.Super. 380, 193 A.2d 861, 863–64 (Ct.App.Div.1963)(upholding a 100–foot radio antenna tower used as a hobby as an accessory use customarily incidental to the enjoyment of a residential property); *Dettmar v. County Bd. of Zoning Appeals,* 28 Ohio Misc. 35, 273 N.E.2d 921, 922 (Ct.Com.Pl.1971) (finding that even an unusual customarily incidental use is permissible unless specifically excluded by a zoning restriction). Only two states require an independent inquiry into the degree of use. *See Marchand v. Town of Hudson,* 147 N.H. 380, 788 A.2d 250, 253 (2001)(finding scale relevant in determining that three 100–foot amateur ham radio antenna towers were not an accessory use); *Presnell v. Leslie,* 3 N.Y.2d 384, 165 N.Y.S.2d 488, 144 N.E.2d 381, 383 (1957)(observing that scope of amateur radio operator's hobby may carry it beyond what is customary or permissible).

---

1. *See Smith,* 2004–NMCA–001, ¶¶ 21–22, 134 N.M. 737, 82 P.3d 547 (rejecting both parties' reference to cases from other jurisdictions because they are "specific to the language of the ordinance in question" and "do not involve the site-specific inquiry that we believe is contemplated by the stated purpose of the A–2 zone").

{26} Based on the plain language of the ordinance and the judicial treatment of the term "customarily incidental" in other jurisdictions, we are not convinced that the ordinance, in leaving "customarily incidental" undefined, implicitly requires or justifies an independent determination of reasonableness. Without adding any words, the ordinance appears to allow amateur radio towers as customarily incidental to residential use and, in express terms, specifically exempts them from height restrictions. Apparently, County zoning officials once read the ordinance that way, and a diligent citizen was induced to rely reasonably on that same interpretation. As we shall see, this is persuasive evidence that the ordinance ought to be construed by the County in a similar manner so as to permit the towers.

### County previously interpreted amateur radio antennas as customarily incidental

■ {27} Of greater importance to our inquiry than the plain language of the ordinance is the result we reach when we apply the rule of construction regarding deference to long-standing administrative interpretations. The Court of Appeals concluded that this rule did not apply "because the County has not had a long-standing interpretation of the zoning ordinance as applied to amateur radio antennas." *See Smith*, 2004–NMCA–001, ¶ 11, 134 N.M. 737, 82 P.3d 547. We disagree.

{28} First, the record contradicts this conclusion. The County conceded that, until the passage of Ordinance 1999–6, amateur radio antennas had been considered customarily incidental to a permissive residential use. Indeed, by informing Plaintiff that amateur radio towers were allowed, and granting the permit, the County construed the ordinance in a way that was consistent with a permissive use. As we noted in *Hinkle II*, an administrative interpretation of even ambiguous language might bind an agency over time to a particular construction of the ordinance. *See* 1998–NMSC–050, ¶ 9, 126 N.M. 413, 970 P.2d 599. We find this principle at play here because we can find no evidence to suggest that a finding of reasonableness was

ever required with any other permit for an amateur radio tower.

{29} Before remanding Plaintiff's case to the Planning Commission, the district court explained that it was "trying to understand whether this customarily incidental definition was really used by the county before this." Nothing that occurred at the hearing before the Planning Commission indicated that reasonableness had ever been a consideration in deciding if something was customarily incidental. In fact, the record suggests the opposite. At one point, a commissioner asked the County's zoning director what would happen if a property owner wanted to build a ninety-foot chimney on a house. A chimney is one of the structures, like amateur radio towers, excluded from height regulations. The director testified that if a structure fell within a permissive use category, and was expressly exempted from height restrictions, "we couldn't really limit it from a height standpoint."

{30} It was only after neighbors complained that the County concluded that the towers did not comply with the zoning ordinance. These facts strongly suggest that the County was implementing a new policy. Under these circumstances, deference is not appropriate. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 42, 888 P.2d 475, 488 (Ct.App.1994) (*Hinkle I*)("Courts generally show little deference to an agency's interpretation of its own statute when the interpretation is an unexplained reversal of a previous interpretation or consistent practice.").

{31} We faced a similar situation in *Hinkle II*, 1998–NMSC–050, 126 N.M. 413, 970 P.2d 599. In *Hinkle II*, the Albuquerque city council rejected a property owner's plans to build a miniature golf course and arcade with go-carts and bumper boats, which zoning officials had approved as a conditional use. *Id.* ¶ 2. The city council interpreted a phrase in the ordinance so that the planned activities would not be allowed. *Id.* ¶ 3. On appeal, this Court found that, even though the city council had never construed the ordinance until that case, city zoning officials had previously construed the ordinance to allow outside activities with conditional use approv-

al. Thus, the city council impermissibly applied a new construction to the property owner's particular request. *Id.* ¶ 7.

{32} As we found in *Hinkle II,* an initial interpretation of an ordinance by an administrative agency constitutes a de facto policy that would be improper for local officials to change non-legislatively. *Id.* ¶ 9. The County zoning director admitted that prior to the 1999 amendments amateur radio towers were permitted as a customarily incidental use. This amounts to a de facto policy that the County attempted to change non-legislatively by reinterpreting its ordinance after neighbors complained. Similarly, we find no evidence that the County had ever evaluated structures such as amateur radio towers to see if they met the definition of "incidental uses" as a "use which is appropriate, subordinate, and customarily incidental to the main use of the lot." Even though the County tries to argue that no one had ever tried to build a tower this high, it cannot create a new rule in Plaintiff's particular situation. *See id.* ("We do not believe that the mere fact that the City Council itself had never interpreted the section in question means that landowners could not justifiably rely on the interpretation it was being given by 'those responsible for its implementation,' i.e., zoning agency officials."). This kind of result-oriented reinterpretation of zoning rules engaged in by the County is exactly what we condemned in *Hinkle II.*

■ {33} We agree with Plaintiff that this newly created reasonableness standard removes the essential characteristics of uniformity and predictability from the land use regulation process. *See Miller v. City of Albuquerque,* 89 N.M. 503, 506, 554 P.2d 665, 668 (1976) (noting importance of promoting "the desirable stability of zoning classifications upon which the property owner has a right to rely"). With a reasonableness requirement read into the ordinance, zoning officials would be invited to make highly discretionary decisions on a strictly ad hoc basis. Landowners would be burdened by not knowing what uses are allowed on their property. Owners have a right to use their property as they see fit, within the law, unless restricted by regulations that are clear, fair, and apply equally to all. Ad hoc, standard-less regulation that depends on no more than a zoning official's discretion would seriously erode basic freedoms that inure to every property owner.

### Purpose to preserve scenic values does not provide adequate standard

■ {34} In an attempt to read the zoning ordinance as a whole, the Court of Appeals relied on the general purpose of the ordinance as an adequate standard for determining what is reasonable in the A–2 zone. *Smith,* 2004–NMCA–001, ¶ 19, 134 N.M. 737, 82 P.3d 547. Given the ordinance's purpose to preserve scenic and recreation values, the Court of Appeals concluded that there was substantial evidence in the record for the Planning Commission to find the height of the towers was unreasonable as a customarily incidental use in the A–2 zone. *Id.* ¶ 24.

■ {35} In some instances, relying on the broader purpose of a statute or ordinance may be a reasonable way to realize the intent of the enacting body. It is doubtless true that a fairly general expression of legislative guidance will suffice to control administrative discretion where it would be impractical and unreasonable to set out more precise standards "without impairing the underlying public purpose." *See City of Santa Fe v. Gamble–Skogmo, Inc.,* 73 N.M. 410, 417–18, 389 P.2d 13, 18–19 (1964).

{36} In this case, however, the County could easily have adopted a specific standard to preserve scenic values in terms of a reasonable height restriction. *See State ex rel. Holmes v. State Bd. of Fin.,* 69 N.M. 430, 441–42, 367 P.2d 925, 933 (1961)(noting the failure to provide detailed standards to guide administrative officials may only be excused where it is difficult or impractical to lay down a definite, comprehensive rule or some discretion is necessary to protect public morals, health, safety and general welfare); *see also Gen. Outdoor Adver. Co. v. Goodman,* 128 Colo. 344, 262 P.2d 261, 262–63 (1953)(en banc)(holding that ordinance requiring signs to be approved by zoning authorities was invalid where no standards were provided and could easily have been prescribed); *Colyer v. City of Somerset,* 306 Ky. 797, 208

S.W.2d 976, 977 (1947)(holding ordinance invalid that allowed zoning body to determine appropriate setback without any standards). For that reason, we find the Court of Appeals erred in concluding that the general purpose language of the A–2 zone supplies county officials with adequate guidance in applying the standard of reasonableness to determine whether a proposed use should be considered customarily incidental.

{37} The results of this case may be unfortunate for the neighbors who understandably regard Plaintiff's radio towers as an eyesore. But Plaintiff fairly relied on the express language of the ordinance and the assurances of the county zoning officials in buying his property. After the County granted Plaintiff a permit, he complied with its terms in the construction of his radio antenna towers. If the County wanted to prevent towers on this scale, the problem could easily have been avoided by doing exactly what has been done since: expressly amending the ordinance with specific height limitations. *See* Bernalillo County, N.M., Ordinance 2004–1 (adopted Jan. 27, 2004)(amending the zoning ordinance to provide for amateur radio towers as permissive uses up to sixty-five feet or conditional uses up to 100 feet). The County has every right and responsibility to regulate structures such as amateur radio towers, but it did not do so explicitly and in fact exempted such antenna towers from height restrictions. The County cannot after the fact come up with a new legal rationale to block an unpopular activity, which was previously permitted, to the detriment of a property owner who did everything in his power to follow the rules.

## CONCLUSION

{38} We reverse the decision of the Court of Appeals affirming the district court. We hold that Plaintiff is entitled to a declaratory judgment that the building permit for his antenna towers was properly issued and that the County's stop work notices are invalid.

{39} **IT IS SO ORDERED.**

SERNA, MAES, CHAVEZ, Justices and VIGIL, J., New Mexico Court of Appeals (sitting by designation), concur.